ABEL JACKSON and SARAH his WIFE *v.* CORNELIUS KIP and MARTIN BERRY.

A testator devises as follows· "I give to my son John, all my lands where I now dwell unto him his heirs and assigns forever, though on this proviso, if he shall again become *compos mentis,* and of sound mind and understanding, and capable of taking care of a family, or should obtain lawful issue who shall be *compos mentis;* but for want of that, then my said son *Abraham* shall have all the lands devised to my son John, to him the said Abraham and his heirs." John remained during his life time *non compos* and on the testator's decease, Abraham took possession of the premises and died seized in the life time of John. Abraham took such an estate of inheritance under this devise as entitled his wife to dower in the premises.

---

*Hornblower,* for the plaintiffs.

*Frelinghuysen,* for the defendants.

The opinion of the Court was delivered by EWING, C. J.

The demandants claim dower of certain lands in the township of Saddle River, in the county of Bergen, which

Abraham Ryerson, the former husband of Sarah Jackson, held under the will of his father, George Ryerson. It was agreed by the counsel of the parties on the argument, that the question on which the claim depends is, whether Abraham Ryerson was so seized of the premises as to entitle his widow to dower, and that he was so seized, if the condition annexed to the devise of the premises is precedent to the estate of John and subsequent to that of Abraham.

The clause containing that devise is in these words, " I give and devise to my son John Ryerson, all my land and real estate where I now dwell on, and lying within the patent of Packquenack, in the county of Bergen; and also nineteen acres of land lying on Packquenack brook, and also all that lot of land lying in Morris county, between John Yellis Mandeville and John J. Mandeville, their lots, unto him, his heirs and assigns forever, though with this proviso, if he shall again become *compos mentis,* and be of sound mind and understanding and capable of taking care of a family, or should obtain lawful issue who shall be *compos mentis;* but for want of that, then my said son Abraham Ryerson, shall have all the lands or real estate devised to my son John, to him the said Abraham Ryerson and to his heirs and to the assigns of his heirs." And it appears by the state of the case, that John was *non compos mentis,* when the will was made, continued so until the death of his father, and subsequently until his own decease.

We are to learn the nature of the condition and to resolve the question proposed to us, from the intention of the testator as expressed in the will, for it is a well settled rule, admitting of controversy only in its application, that the nature of the condition depends not on specific words, nor their juxtaposition, but on the intention of the testator; for the same words may make a condition precedent or subsequent, and there are no technical words which contradistinguish the one from the other. *Robinson* v. *Comyns, Ca. temp. Talb.* 166; *Lock* v. *Wright,* 1 *Str.* 571; *Ackerly* v.

*Vernon, Willes* 156 ; *Hotham* v. *East India Co.*, 1 *T. R.* 645 ; *Porter* v. *Shephard,* 6 *T. R.* 668 ; *Doe* v. *Scudamore,* 2 *Bos. and Pul.* 295 ; *Barruso* v. *Madan,* 2 *John. Rep.* 145 ; *Taylor* v. *Mason,* 9 *Wheaton* 341.

The first member of the clause declares the person of the devisee, " to my son John "—the property devised, " all my land and real estate where I now dwell on," &c.—and the nature of the estate, " unto him and his heirs and assigns forever." The next member shews that the testator did not design to give the premises to John, unqualifiedly and under every circumstance. It shews that his estate was to depend on a condition, though in itself it does not serve to fix the nature of that condition,—" though with this proviso "—as if he had said, I give, but on the condition I am about to express. The next member declares the nature and circumstances of the condition—" if he shall again become *compos mentis* and be of sound mind and understanding and capable of taking care of a family, or shall obtain lawful issue who shall be *compos mentis.*" And language cannot readily be conceived more plain, more explicit, or more appropriate to evince the design of the testator that the circumstances expressed must precede the vesting of the estate. I give to A. if he shall marry B. The marriage is a precedent condition and until that happens no estate is vested in A. I grant to my lessee for years that he shall have the fee, if within the term he shall pay me 100 marks. The fee simple passeth not until the 100 marks be paid, 2 *Bl. com.* 154. I give, says the testator, to John if he shall become of sound mind. He must first become of sound mind. I give to him, if he should obtain lawful issue who shall be *compos mentis.* He must first obtain such issue. The testator, in the subsequent member of the clause, proceeds to dispose of the premises until the condition should be performed, and in case it should become incapable of performance. " But for want of that, then my said son Abraham Ryerson, shall have all the lands or real estate devised to

my son John, to him the said Abaham Ryerson, and to his heirs," &c.—wanting such capacity and wanting such issue, Abraham and his heirs and the assigns of his heirs should have the lands. It deserves, moreover, to be noticed that the testator did not anticipate the immediate possession and enjoyment of the lands at his decease by either John or Abraham, for presuming, what, however, did not happen, that his wife would survive him, to make provision for her, he gave her all his estate, both real and personal, during her widowhood, and after her death or second marriage, he gave to John the lands in question, if he should become of sound mind or should obtain lawful issue of sound mind, but for want of that, in case of the want of such capacity and of such issue, Abraham and his heirs should have those lands.

The stress of the argument of the defendant's counsel was on the meaning and operation of the words, "for want of that;" and this want, it was said, could only be fully ascertained at the decease of John, for until then he might become sane or have issue. But it is obvious that the want might, according to the views and in the contemplation of the testator, have existed, as it actually did exist, in the lifetime of John, and the existence of the want vested the estate in Abraham, which, the liability to removal of the want, did by no means prevent. It could not prevent the estate from vesting in Abraham that by subsequent events it might be divested, or that the possibility of being divested would not cease until the death of John, for such uncertainty is inherent in every estate which depends on condition subsequent.

The construction of the defendant's counsel denies all influence to the words, "if he shall again become *compos mentis* and be of sound mind," and obliterates them from the will. Unless, indeed, the most indefensible ground be assumed that neither John nor Abraham should take during John's life unless he should be restored to sanity; for if Abraham could not take during John's life, because the want of capacity and issue could not be ascertained until his

decease, then neither could take, and what in the meantime became of the premises? or John must take, in opposition to the plain words which forbade him unless he became sane.

The construction I have given to the foregoing clause harmonizes with every other part of the will; and the design of the testator to give John nothing but an abundant maintenance if he continued insane, and in such case to give all his estate, real and personal, except such maintenance, to his other children, breathes through every line of the will where John is mentioned. The testator having considerable real estate, parcels it out among his two sons and three daughters in such manner as he deemed most advisable, if John, one of his sons, should, as he yet appears to have hoped, be restored to sanity of mind. But intending if that event did not happen, that John should have none of his real estate, and deeming in such case a different disposition desirable of that part which if the event should occur he designed for Abraham, he directs Abraham to have the part designed for John, and the part originally intended for Abraham to be divided among his daughters, excepting a portion of that part which he meant Abraham should have under all circumstances. Nor can I here perceive the slightest taint of the absurdity supposed by the defendant's counsel. For if John did not become sane, Abraham was to have the mill and twenty acres and tract of meadow, part of the real estate at Newfoundland, and the daughters the residue, but if John should become sane, Abraham was to have the whole and the daughters no part of that real estate. It will farther be observed that each of the daughters has a portion of real estate devised to her in no wise dependent on the sanity of their brother.

In a subsequent clause of the will the testator directs that after the death or second marriage of his wife, all his personal estate should be equally divided among all his children each an equal share, "*though if John should remain non compos mentis,* then, in that case, his share thereof to be

applied towards his maintenance, though before any dividend is made of my personal estate, my son Abraham, *and my son John, if he should return to his proper senses again,* shall each have first two good working horses and so much utensils as they shall want to plough with." Expressing here also in the plainest manner and preserving the intention already manifested in the prior parts of the will, that John should not take unless previously restored to his sanity. Another posterior clause is in these words—" And I do order and direct that if in case my said son John shall remain *non compos mentis,* that then he shall be maintained by all my other children out my real and personal estate so that he may not suffer or come to want." If light on the intention of the testator in other parts of the will were required it is hence most clearly reflected. It is here abundantly shewn that the testator had not intended for John any part of his real estate unless he should previously become of sound mind—or why provide a maintenance for him? And that he did design his other children should immediately take the whole of his real and personal estate, by whom, and out of which, such maintenance was immediately and during such incapacity to be provided. Could the testator have suspected that John, a single man, might suffer and come to want, if he had so large a portion of the property as the homestead farm and the nineteen acres and the lot in Morris? or is it reasonable that he would have withdrawn so much from aiding in common with the other property in the support of John? Would he not if he had designed to preserve it entire for John when he should become sound or for his lawful issue if he should have any, and that Abraham should not in the meantime take and enjoy it, have subjected it, and it alone, for it was amply sufficient, with the maintenance of John?

It is manifest then that when Abraham after the decease of his father entered upon the premises in question he

became seized " of an estate of inheritance," *Rev. Laws* 397, *sec.* 1, and the determinable quality attached to it did not weaken the claim of dower, *Parke on Dower* 49.

The examination of the other position assumed by the plaintiff's counsel, to shew that John was never seized because incapable by reason of his lunacy to take as a purchaser, is unnecessary.

Let judgment be entered for the demandants that they have seizin, &c., and let a writ of inquiry issue, &c.

FORD, J. This action arises on a claim of dower in the homestead late of Abraham Ryerson, deceased, and supposes him to have had an estate of inheritance therein, by virtue of a devise in the will of his father George Ryerson, deceased ; contrary to the opinion of the defendants, who insist that the homestead was *not* given to *Abraham* but to his brother *John,* a lunatic. That part of the testator's will, which gives rise to these opposite opinions, is as follows :

" I give and devise to my son *John Ryerson,* all my lands where I now dwell, unto him his heirs and assigns forever, though on this proviso, if he shall again ·become *compos mentis,* and of sound mind and understanding, and capable of taking care of a family, or should obtain lawful issue who shall be *compos mentis ;* but for want of that, then my said son *Abraham Ryerson* shall have all the lands devised to my son John, to him the said Abraham and his heirs and the assigns of his heirs."

*John* remained during his lifetime *non compos mentis ;* and on the testator's decease, *Abraham* took possession of the homestead, and after many years died seized in the lifetime of John.

The question first presenting itself is, whether under this devise John took a *vested estate* in the homestead, or only a future *contingent interest ?* Now the first clause as clearly expresses the intent of the testator as it is possible for language to do. By giving the homestead to John *if he shall*

*again become compos mentis*, it most necessarily imports a gift upon *condition*, and cannot be understood to mean an *unconditional gift.* It resembles a multitude of familiar cases that are universally allowed to be conditions; such as a devise to A., if he shall attain the age of 21 years; or shall marry; or shall pay a sum of money; or shall return from sea. It is admitted that he shall have the homestead if he become *compos mentis;* and if he shall have it also if he do *not* recover his senses, then he shall have it *either way*, and the words, *"if he shall become compos mentis"* might as well have been left out of the will. But it never can be pretended that a devise *if he recover his senses* is a devise if he do *not* recover them; and therefore these words do most necessarily import a conditional devise. And in the next place, it is most evidently a condition *precedent;* or such as must happen and come to pass *before* the homestead can vest in John; because if it be considered a condition *subsequent;* or such as happening and coming to pass shall *divest* him of the homestead, then he would *lose* the estate upon his becoming *compos mentis*, which directly contradicts the words of the testator and his intent. as understood by both parties. The event of his becoming *compos mentis* was the thing to give him a title, and as the event never came to pass, it follows that he never had a title. A devise to a person, if he· recover his senses, cannot be a positive devise whether he recovers them or not. Therefore the words of the clause so clearly shew an intent of not giving the premises to John unless he recovered his understanding, as hardly to need being corroborated by other parts of the will; and yet corroborations are not wanting. In another part, he is to have "two good horses to plough with" upon the *same* condition, *"if he should return to his proper senses again;"* could it possibly mean that if he continued *insane* he should have the land and two good horses to plough with? Again, the will, which gives the lunatic nothing, in an *absolute* sense, except one fifth of the personal estate,

carefully order that fifth *to be applied to his maintenance;* and the *omission* of such order touching the application of the *land* or *horses* to his maintenance tends to shew *they* were not to belong to him if he continued to be insane. Again, we perceive the testator's feelings much excited, lest this son, as he says, *"might suffer and come to want;"* but what foundation could these fears have rested on, if the testator had settled on him the entire homestead, two tracts of out land, two good horses, and one-fifth of all the moveable estate, especially as during his insanity he could enjoy only the lowest degree of expense, comprising mere animal subsistence and comfort; on the other hand, if the testator meant none of these things for him while he remained *insane,* except a fifth of the personalty, he might reasonably indulge the fear of his coming to *want,* and make his maintenance, as he has done, a direct charge upon all his *other children,* and upon his *whole estate,* real and personal. In every point of view, therefore, as John never became *compos mentis* he never acquired a title to the homestead. The consequence is, that it was devised to Abraham or to neither of them.

The question of its being devised or not to Abraham must depend on the latter clauses of the sentence, which read thus: "But *for want of that, then my son Abraham shall have all the lands devised to my son John.*" The *want of that,* evidently means want of intellectual capacity in John. It was argued that John had all his lifetime for the recovery of his senses, and therefore that the *want or defect* could never be complete and perfect till his death, so as to vest the estate in Abraham. But this conclusion will not flow from the premises. It is true that he had his whole lifetime to comply with the condition by surmounting *the defect;* but it does not follow that a want of intellect did not exist at the death of the testator; on the contrary, it then so fully and completely existed as to prevent his taking under the devise; and therefore at the death of the testator that very

Westfield *v.* Warren.

*event* happened on which Abraham was to take the estate. It was indeed *defeasible* in him and his heirs in case John, at any time during his life, should become *compos mentis*, but in the mean time it was an estate of inheritance, in which his widow is clearly entitled to dower. Therefore let judgment be entered for the plaintiffs according to the terms of the case.

Judgment for plaintiff.