### F. ANGELO HAASE v. THE STATE.

1. If an indictment avers that certain acts essential to the crime of publishing a libel occurred at the city of Newark, in the county of Essex, wherein the venue is laid in the margin, and then sets out the libelous publication, in the body of which " Hoboken, Hudson county, N. J.," is mentioned, and then proceeds to aver that other acts essential to the crime occurred at the city and county aforesaid, the place last referred to is Newark, in Essex county.

2. The criminal publication of a libel is complete when the accused, with intent to scandalize, affords, or causes to be afforded, to another the opportunity of learning the contents of the libelous instrument, although in fact the contents do not thereby become known.

3. An allegation that the defendant " published," or " caused to be published," the libel, is sufficient, even though the libel be in a foreign language, the word " published" being the proper and technical term to denote an illegal publication.

4. If a libel set out in an indictment expressly attacks a person in his professional character, that fact sufficiently shows that, if published, it was published of him in that character.

5. If an indictment presents with reasonable certainty all the facts necessary to render the offence judicially apparent, it should not be quashed.

6. On indictment for the publication of a writing under a qualified privilege, the court charged that if the defendant published it from malice,

to gratify a feeling of revenge for supposed injury, he was guilty. *Held*, not erroneous, as a response to the defendant's request to charge that the state must prove express malice.

7. The legality of certain questions, on the examination of witnesses, considered.

On error to the Essex Quarter Sessions.

Argued at June Term, 1890, before BEASLEY, CHIEF JUSTICE, and Justices DIXON and MAGIE.

For the plaintiff in error, *Samuel Kalisch.*

For the state, *Elvin W. Crane, Prosecutor of the Pleas.*

The opinion of the court was delivered by

DIXON, J. The first alleged error, relied on in the brief of counsel for the plaintiff in error, is because the court below refused to quash the indictment.

The first reason assigned for quashing the indictment is, that it fails to present the said plaintiff as the person indicted. We are unable to perceive any defect in this particular.

The second reason is, that the indictment does not show that the offence was committed within the jurisdiction of the court. The alleged ambiguity arises from these circumstances : the indictment having, in the margin, named Essex county as the venue, and having averred that certain wrongful acts of the accused transpired in the city of Newark, in the county of Essex, proceeds to set out the libel which is the subject of indictment, and in the body of which is mentioned " Hoboken, Hudson county, N. J. ; " then the indictment continues with its averments of other wrongful acts of the accused as taking place " at the city and county aforesaid." Counsel urges that this last clause must be referred to the county named immediately before it, viz., Hudson county.

But we think otherwise. Hudson county is mentioned, not because it appears to have been in the mind of the grand jurors as at all connected with the offence, but incidentally, as part

of the instrument recited in the indictment, and when, after such recital, the statement of the ingredients of the misdemeanor is resumed, the words "city and county aforesaid" necessarily carry the thought back to the place which had previously engaged the attention of the grand jury, viz., Newark, in Essex county.

Moreover, our Criminal Procedure act, § 42 (*Rev., p.* 274), enacts that an indictment shall not be held insufficient for want of a proper or perfect venue.

The third reason assigned for quashing the indictment is, that, although the alleged libel is stated to have been in the German language, there is no averment that the person to whom it was sent read or understood it, or had it translated to him, and hence no publication is charged.

What is necessary to constitute criminal publication of a libel, is a subject which has received considerable judicial discussion, notably in the case of *King* v. *Burdett,* 4 *Barn. & Ald.* 95; but it seems to be now generally conceded that, if the accused, with intent to scandalize, affords, or causes to be afforded, to another an opportunity of learning the contents of the libelous instrument, he is guilty of a publication, although in fact the contents do not thereby become known. *Whart. Cr. L.,* § 1618.

The fact of publication may be averred in various ways. In actions for oral slander, it is usually alleged that the defendant uttered the words in the presence and hearing of others; but it may be averred that he openly and publicly uttered them, without alleging that any person was within hearing, as in *Taylor* v. *How, Cro. Eliz.* 861, where the allegation *quod palam et publice promulgavit* was adjudged sufficient. In actions and prosecutions for libel, the form generally adopted is a mere averment that the defendant published, or caused to be published, the instrument complained of. If slander be spoken in a foreign tongue, it is not enough to charge an utterance within the hearing of others, unless it be also alleged that the hearers were acquainted with the foreign language; because such an utterance does not warrant a pre-

sumption against the defendant that he had afforded others the means of understanding his accusation. *Price* v. *Jenkings, Cro. Eliz.* 865 ; *Wormouth* v. *Cramer,* 3 *Wend.* 394 ; *Amann* v. *Damm,* 8 *C. B., N. S.,* 597, and *note* in 98 *Eng. Com. L.* 602. But when the pleading contains an averment that the defendant *published,* or caused to be *published,* the scandalous matter, then the fact that the libel is in a foreign language does not seem to require any special allegation that such language was understood by those to whom it came, for that is implied in the averment that it was *published,* this word being the proper and technical term to denote an illegal publication (*Stark. Lib.* *359) ; only in the proof need an ability to comprehend the foreign tongue be shown.

In the present indictment the libel was in German, and the allegation is, that the plaintiff in error sent it to F. S., and thereby caused it to be published, without saying that F. S. understood German.

According to the rules above stated, this appears to be sufficient. If the plaintiff caused the libel to be published, it is immaterial whether he did so by sending it to one who did not himself understand it, or by some other means. Sending it to such a person would not of itself be a publication, but it might readily be the means of causing a publication, and such is the charge of the indictment. If the accused, with the intent charged, did the act charged, and thereby brought about the result charged in the indictment, he would be guilty.

The last reason assigned for quashing the indictment is, that although it avers that E. M. was a physician, and charges the plaintiff with writing and composing the libel of and concerning E. M. in his business and profession of physician, with intent to injure him as a physician, yet it charges a publication of and concerning the said E. M., without adding "in his business," &c.

The libel set out in the indictment expressly attacks E. M. as a physician ; it therefore necessarily appears on the face of the indictment that, if published, the libel was published of and concerning E. M. in that character. This is sufficient.

*Stanton* v. *Smith,* 2 *Ld. Raym.* 1480; *Jones* v. *Little,* 7 *Mees. & W.* 423.

The indictment presents with reasonable certainty all the facts necessary to render the offence judicially apparent, and hence the court below did right in refusing to quash it. *Whart. Cr. Pl. & Pr.,* § 151.

The next alleged error, on which the plaintiff relies for reversal of the judgment, is, that after E. M. had without objection testified that he had been regularly licensed by a diploma from the Medical Society of New Jersey, he was permitted further to state that he was licensed on May 24th, 1876; that a copy of his diploma was filed in Hoboken, and that he had not registered in Hoboken a forged diploma. The objection presented against these statements was, that they were not the best evidence.

Oral testimony as to the time when a written instrument was actually issued is certainly primary evidence; the statement, that he had filed a copy of his diploma in Hoboken, was admissible as a mere preliminary to the production of the file if that should become proper, and at any rate was harmless to the accused, and so affords no ground for reversal (*Rev.,* *p.* 264; *Crim. Pro.,* § 89); and the last statement was a negative, which could not possibly be established otherwise than by oral testimony. Besides, the diploma itself was subsequently produced, proved and put in evidence by the state, and so rendered innocuous anything which might be deemed secondary evidence of its contents.

The next alleged error is, that the court excluded as immaterial the plaintiff's question to E. M. on cross-examination, "By what authority did you practice before receiving the diploma in 1876?"

The libel consisted of a charge that E. M. had registered as physician on a forged diploma, and for that reason he had been ordered away from Hoboken and College Point, and certain physicians had refused to consult with him. E. M. had first arrived in Hoboken in March, 1866, and had practiced there about twelve years. Between 1866 and 1876 no diploma or

authority to practice medicine in this state was required.  *Hill* v. *Morrison,* 17 *Vroom* 488.  Under these circumstances, we are unable to see how the question overruled could have elicited any reply relevant to the issue.  Its bearing, if any, was certainly so remote that its admission was within the discretion of the trial court.  *Schenck* v. *Griffin,* 9 *Id.* 462.

The next errors argued are for the overruling of two questions, likewise put to E. M. on cross-examination, as to what he had said and done in the clerk's office of Essex county. These questions had no relation to the subjects on which E. M. had been examined in chief by the state, and so were properly overruled.  *Donnelly* v. *State,* 2 *Dutcher* 463.  Besides, E. M. answered them, and his answer was allowed to stand.  Equally foreign to the subjects of his examination in chief were the questions put by the plaintiff in error to E. M. with regard to the duties of members of the society known as Knights and Ladies of Honor.

The next alleged error is because the court refused to direct the acquittal of the accused, for want of evidence showing a communication of the libel to any person acquainted with the German language.

F. S., to whom the libel was sent, testified that he read it, as we understand his evidence.  Such also was the understanding of the trial court; and when, on the motion for an acquittal, the state offered to recall F. S. for more explicit testimony on this point, the plaintiff objected.  The evidence warranted the jury in finding that F. S. read the libel, and consequently that he understood the language in which it was written.

The next alleged error is for the refusal of the court, on objection by the state, to permit a witness for the defence to testify what was the full name of one " M." on the register of physicians in Essex county, which testimony was offered to prove the bad character of the complaining witness, whose last name was M.

For such a purpose the evidence was plainly incompetent. Immediately after the court had ruled upon the question, the

state offered to withdraw its objection, but the plaintiff in error refused the offer, saying he wanted the benefit of the exception. This would have cured the error, had there been one—*volenti non fit injuria.*.

The other errors relied on touching the admission of evidence complain merely of the order in which the testimony was produced. With regard to this matter, much is left to the discretion of the trial court (*State* v. *Fox*, 1 *Dutcher* 566; *Donnelly* v. *State*, 2 *Id.* 601), and in the present case such discretion does not seem to have been abused.

The plaintiff in error lastly complains of the refusal of the court to charge as requested in two particulars—(1) that if the jury believed the communication, *i. e.*, the libelous letter, was one of qualified privilege, express malice must be proved by the state; (2) that if the jury believed the defendant had an interest in the subject matter of the communication, &c., it is a privileged communication.

As to the first request, the court charged the substance of it. Although it did not use the term "express malice," it employed language equivalent and much more intelligible to a jury, saying to them: "The burden is thrown on the state to show affirmatively that the communication was made with malice, that is to say, not from a sense of duty; but from a dishonest motive" * * * "if the defendant honestly believed it to be his duty to make the communication, and did so under a sense of duty only, he is not guilty. If, on the other hand, his motives were not good, if the communication was not made for a justifiable end, but from malice, to gratify a feeling of revenge for supposed injury, then he is not justified, and he should be found guilty."

With regard to the second request, the charge of the court went further in favor of the plaintiff in error than the request; for, instead of leaving it to the jury to determine whether the letter was privileged, the court charged that it was so, and became criminal only on affirmative proof of a dishonest motive, a desire to gratify a feeling of revenge.

The judgment should be affirmed.