18 N.J. Super. 511 (1952)
87 A.2d 375
STATE OF NEW JERSEY, PLAINTIFF,
v.
DOMINICK LOMBARDO, DEFENDANT.
Superior Court of New Jersey, Camden County Court Law Division (Criminal).
Decided March 7, 1952.
*513 Mr. Mitchell H. Cohen, Prosecutor of Camden County, for the State.
Mr. Frank G. Schlosser for the defendant.
PALESE, J.C.C.
The defendant, Dominick Lombardo, moves to dismiss three indictments returned by the Camden County grand jury. The indictments are Nos. 985, 986 and 991. The defendant first attacks the indictments on the ground that they are not certified as "true bills" by the foreman of the grand jury.
Rule 2:4-11 provides in part as follows:
"The indictment or accusation shall be a written statement of the essential facts constituting the offense charged. It shall be signed by the prosecuting attorney. The indictment shall be endorsed by the foreman."
It will be noted that the rule does require an endorsement, but there is no requirement in the rule that the indictment shall contain the words "A True Bill"; nor is there anything in the rule that renders the indictment fatally defective without such certification.
*514 The word "endorsed" appears on each indictment and thereunder appears the name of "William P. Partenheimer, Foreman," and each indictment was signed by the prosecuting attorney.
Manifestly the purpose and reason for the endorsement and the signature of the foreman is to identify the indictment and to demonstrate the fact that it is the act of the grand jury.
It may be pointed out that prior to the new rules of criminal procedure such certification by the foreman was not a necessary prerequisite to the validity of an indictment.
In the case of the State v. Magrath, 44 N.J.L. 227 (Sup. Ct. 1882), Justice Beasley reviewed the entire subject concerning the necessary formal requisites of an indictment, and concluded that it is not necessary to the validity of an indictment that it be certified as a "true bill." It was not even necessary under the aforementioned case for the foreman to sign the indictment, although Justice Beasley acknowledges that the American authorities were in conflict upon this subject and felt that his determination was best sustained by reason, and as well sustained by authority.
The endorsements as appear on each indictment are sufficient to identify the indictments and there is a sufficient compliance with the provisions of Rule 2:4-11.
It is difficult to perceive any more sufficient endorsement than the method employed by the foreman of the grand jury with respect to the indictments under consideration.
Defendant urges that indictment No. 985, which charges the defendant with false swearing, contrary to provisions of R.S. 2:157-4 and R.S. 2:157-5, fails to charge a crime, and further that this indictment is fatally defective because in several of the counts wherein statements of an inconsistent nature are alleged the word "willful" is not used.
R.S. 2:157-5 reads as follows:
"Where a person has made contrary statements on his oath or oaths administered within the provisions of this article, it shall not *515 be necessary to allege in an indictment or allegation which statement is false but it shall be sufficient to set forth the contradictory statements and allege in the alternative that one or the other is false.
Proof that both such statements were made under oath duly administered shall be prima facie evidence that one or the other is false; and if the jury are satisfied from all the evidence beyond a reasonable doubt that one or the other is false and that such false statement was willful, whether the same was made in any judicial proceeding or before a person authorized to administer an oath and acting within his authority, it shall be sufficient for a conviction."
Counts 1, 2, 3 and 4 of this indictment are framed by setting forth contradictory statements made by the defendant under oath and charge in the alternative that one or the other was false. The offense charged in each count, and the manner of pleading it, are concededly within the provisions of R.S. 1937, 2:157-5. The argument is that false swearing alone is not sufficient, in the absence of the element of willfulness. Therefore to charge a crime the indictment must affirmatively charge that the defendant not only swore falsely, but that he did so willfully.
The defendant in each of these counts is charged with the single offense of false swearing, and he is informed of precisely what he is to meet. The counts charge the defendant in the manner as provided for in the statute, that is, by setting forth the contradictory statements and charging that one or the other, without specifying which, is false. But the statute further provides that the jury shall be satisfied beyond a reasonable doubt that one or the other is false, and that such false statement was willful, in order to justify a conviction. The Legislature has set forth what shall constitute evidence of the commission thereof and the test in this regard is whether or not the Legislature, in setting forth what evidence shall constitute proof of the crime, has set up a reasonable standard.
It is sufficient if the indictment makes it judicially apparent that a crime was committed. Haase v. State, 53 N.J.L. 34, 20 A. 751 (Sup. Ct. 1890); State v. Ellenstein, 121 N.J.L. 304, 2 A.2d 454 (Sup. Ct. 1938).
*516 Defendant argues that the word "willful" is a prerequisite to the validity of the indictment. It has long been held in our State that an indictment for a statutory crime is sufficient where the offense is charged in language substantially similar with that of the statute, and the mere omission of the exact words named in the statute is not sufficient to vitiate the indictment. State v. Hickman, 8 N.J.L. 299 (Sup. Ct. 1826); State v. Caporale, 85 N.J.L. 495, 89 A. 1034 (Sup. Ct. 1914); State v. Augustine, 15 N.J. Misc. 401, 191 A. 805 (Sup. Ct. 1937).
Under the statute under consideration, where two contradictory statements are made, it is an irresistible conclusion that one of them must be false, and the defendant was so charged. To justify a conviction the jury must be satisfied from all the evidence, beyond a reasonable doubt, that one or the other was false, and that such statement was made willfully. It is true that the essence of the crime, and proof thereof, is willfully testifying to two contradictory statements, one of which must be false. It is essential to the proof of the crime, as charged in the indictment, that he falsely swore to two contradictory statements, and if he did not swear to both, or if the jury is satisfied that one was not willful, then he must be acquitted. If they are contradictory then, by necessity, one is false, but the defendant can successfully defend by saying that they are not contradictory, or that he did not so testify, or that either of the statements was not willfully made. The gravamen in the charge is false swearing. Surely the Legislature may designate what evidence shall constitute proof of the elements of the crime, and under R.S. 2:157-5 it is provided that proof of two contradictory statements shall be prima facie evidence that one or the other is false; and then it is provided as to what shall justify a conviction, to wit, that the jury must be satisfied beyond a reasonable doubt that one or the other must be false, and that such false statement was willful.
If it be that the statute designates the legal effect to flow from the proof of the contradictory statements, there is a *517 precedent. R.S. 2:134-18, the Bad Check Statute, State v. Parsons, 6 N.J. Misc. 76 (Sup. Ct. 1927), affirmed 105 N.J.L. 253, 142 A. 918 (E. & A. 1928), wherein the drawing of a check is made prima facie evidence of intent to defraud. Although the word willful is not used in these counts, I find that the indictment sufficiently alleges the crime under provision of R.S. 2:157-5.
Counts 5, 6 and 7 of the same indictment charges defendant did willfully swear falsely, with a recital of the false swearing, in violation of R.S. 2:157-4. Surely the language is sufficient to apprise the defendant that he is being charged with willful false swearing. R.S. 2:157-4 provides that:
"Any person, his procurers, aiders and abettors, who shall willfully swear falsely in any judicial proceeding, or who shall willfully swear falsely before any person authorized by virtue of any provision of law of this state to administer an oath and acting within his authority, shall be guilty of false swearing."
The defendant further contends that although the word "willful" is used in the body of the indictment, it should have been contained at the end of each statement concerning which he is charged with false swearing.
In each of these counts there is a recital of the investigation of the grand jury, that the defendant was duly sworn by the foreman of the grand jury to tell the truth, and then he is charged he did willfully swear false in substance and in fact, that he had never received any moneys from John and Pauline Caruso between the 17th day of May, 1951, and the 1st day of July, 1951, when, in fact, he had so received money from John and Pauline Caruso between the 17th day of May, 1951, and the 1st day of July, 1951. Counsel for defendant contends there is no recital of what is alleged to be the true fact. Attention may be called to count 6 of the indictment wherein it is charged that the defendant did then and there willfully swear falsely in substance and in fact that he did not know that a prisoner, Rocky Catalano, had *518 been permitted to leave the jail, whereas in fact said Rocky Catalano had been permitted to leave the jail to the knowledge of the said Dominick Lombardo.
The gravamen of the charge is that of willful false swearing under oath. The indictment sufficiently identifies the proceedings under which the statement was made and the person before whom it was made; it sufficiently shows that the defendant was sworn, that the person administering the oath was duly authorized to act within his authority, on what date and at what place the statement was made, the willful and false swearing under oath of the substance and fact of such swearing, together with statements negativing the truth of such swearing. It is not necessary to the validity of the indictment to repeat the word "willfully" after each statement. It is sufficient if the count read as a whole clearly demonstrates that the crime is judicially apparent. Therefore all of the counts in the indictment, I find are sufficient and allege a crime in language substantially in conformity with the provisions of R.S. 2:157-4 and 5.
Objection is made to indictment No. 986 in that the indictment does not state facts sufficient to constitute a crime, and also that the sheriff alone is responsible for the conduct of the county jail.
The defendant was the undersheriff of the County of Camden, and as such was an officer and employee of the county, and, as charged in the indictment, was charged with the proper governance, control and management of the Camden County jail, and with the direction and control of all officers therein; that he was charged with the public duty of keeping persons committed to the jail confined in the jail. This indictment enumerates nine specific instances of misconduct in office.
Surely it cannot be argued that the undersheriff was not a public official of the County of Camden. A reading of the indictment clearly and sufficiently charges that the defendant, as an officer and public official, was charged with the *519 duty, control and management of the jail. The defendant was indicted for misconduct in office in having violated his public duties, in that on December 20, 1950, he took a prisoner, to wit, Herbert Molloy, sentenced to the county jail by the Camden City Municipal Court, outside the confines of the Camden County jail. Other instances may be summarized as follows: On March 15, 1951, he took one Cordelle Massi, sentenced to the county jail by order of the Camden County Court, outside the confines of the Camden County jail; that on December 26, 1950, he permitted a prisoner, sentenced by the Camden Municipal Court to a term of five days, to leave the county jail without the payment of a fine; that on December 6, 1950, he accepted a fine of $5 and costs from one Mary Freeman and that he failed to pay over and deliver to the person or persons duly authorized to receive the same but converted the same to his own use; that he did permit visitors in the jail at improper and irregular times to visit prisoners in the jail and received money from such visitors; he is also charged with willfully and unlawfully permitting and authorizing acts which in themselves were unlawful; that he ordered, willfully and unlawfully, one Joseph Naphas to take a prisoner out of jail and out of the confines of the Camden County jail; that he unlawfully did take outside of the confines of the Camden County jail one Robert Millard, a prisoner in the jail, as was also the case of one Rocky Catalano.
Most of the criticism expressed is that the sheriff is solely responsible for the operation and control of the jail, but counsel fails to observe in the indictment that it is charged and alleged that the defendant, as undersheriff, was charged with the conduct and management of the jail. It is argued that if the sheriff delegated this authority to the defendant, the indictment should have so charged as a fact in the indictment. The indictment definitely and clearly charges that the defendant as the undersheriff had control and management of the county jail; delegation of the authority would be a matter of proof at the trial.
*520 The defendant's argument, in substance, is that because of R.S. 30:8-17 and R.S. 30:8-18, the sheriff alone is responsible for the control of the jail, but by statute the sheriff has authority to appoint an undersheriff. See R.S. 40:41-28. Can there be any other interpretation to the indictment than that the defendant was the undersheriff, assigned and placed in charge of the jail, and upon such assignment given the duties of control and charge of the county jail? Surely this would be the clear implication of the charges in the indictment. The indictment was not designed to charge a statutory offense, but rather a common law crime.
The duty of the sheriff's office  this includes the undersheriff  to operate and maintain the county jail in an efficient and orderly manner, is generally known and accepted. And it is contended that the duties of an undersheriff are imposed upon him by the common law, the source of which need not be pleaded in the indictment but is properly a matter of proof. By statute, R.S. 40-41-30, the sheriff may appoint an undersheriff. All of the acts of the undersheriff are done in the name of the sheriff and therefore the undersheriff is responsible to the same extent for the discharge of his duties as the sheriff. See Bouvier's Law Dictionary (Baldwin's ed. 1934), page 1108, Chitty's Commentary on Blackstone, page 261, wherein it is specifically held that the undersheriff has the same power and authority as the sheriff.
It is the duty of the sheriff or his undersheriff to keep or maintain prisoners committed to their custody. See State v. Brown, 126 Pac. 245 (Crim. Ct. Apps. Okla. 1912); State v. Cyrus, 97 S.E. 412 (Super. Ct. Apps. W. Va. 1918). And it is well recognized and generally accepted that the undersheriff has the same duties and authority with respect to the ordinary duties of the sheriff as the sheriff himself. In Allen v. Smith, 12 N.J.L. 159 (Sup. Ct. 1831), our court dealing with a civil problem stated that a deputy or undersheriff by virtue of his appointment has authority to execute all the duties of the office of the sheriff.
*521 It is unnecessary to cite any authority for the principle that any public official who is guilty of unlawful or corrupt acts in the course of his official capacity is guilty of malfeasance.
The defendant cites the cases beginning with State v. Middlesex and Somerset Traction Company, 67 N.J.L. 14; 50 A. 354 (Sup. Ct. 1901) and culminating with State v. O'Brien, 136 N.J.L. 118; 54 A.2d 806 (Sup. Ct. 1947).
These cases are authority for the proposition that when a general law of the State creates a duty, that law need not be recited in the indictment for the courts are bound to take judicial cognizance of its public laws. However, when a duty is created by private acts, the court cannot judicially notice the private statute, and therefore the same must be pleaded. These cases have reference to particular statutes which govern private undertakings. For example, in the Middlesex case the company was obligated to maintain and repair certain public streets. No public officer or public duty was involved. The indictment merely alleged that the defendant company neglected to repair. This, of course, concededly, is fatal, because there is no indication of how the duty to repair arose. These cases are inapplicable to the instant case. The accusations in the indictment charge, in legal language, malfeasance in office.
A case somewhat similar to that under consideration, is the case of State v. McFeeley, 136 N.J.L. 102; 54 A.2d 797 (Sup. Ct. 1947). In that case the defendants complained that the source of their duty was not sufficiently pleaded. The defendants were police officials and the court held that since their duties were generally known and accepted, it was sufficient in an indictment based upon the accusation of an official's misconduct in office to plead that the defendants were entrusted with the governance, control and management of the police department, and that they did unlawfully and willfully neglect and omit to perform the said public duties so enjoined upon them. That case seems particularly apropos. The indictments under consideration *522 certainly allege with as much particularity the duties and source thereof of the undersheriff as does the McFeeley case, supra.
Another case wherein an indictment was attacked is the case of Commonwealth v. Hubbs, 8 A.2d 618 (Super. Ct. Pa. 1939). In that case, the court quashed the indictment, but on a different ground. The point of the case which is important with respect to the case under consideration is that the portion of the indictment dealing with the duties of the defendant was upheld. In that cause, the indictment contained four common law counts, each reciting that the defendant was a public officer  superintendent of the Bureau of Police  and was charged with a duty to cause the laws of the commonwealth to be executed and enforced and that he disregarded his duties. The court discussed the fact that this officer was not of statutory creation but, nevertheless, implied that there was sufficient allegation of the defendant's duties in the indictment.
This indictment charges with clearness and certainty various cognate acts of official misconduct on the part of the defendant. Malfeasance in office, generally termed official misconduct, is a common law offense. The attack upon this indictment is without merit, and therefore the indictment is valid.
Coming now to indictment No. 991, the defendant contends that it does not charge a crime, and also that the alleged agreement is not criminal under R.S. 2:119-1, unless brought within the scope of section (h) of the statute. This indictment charged a conspiracy and charges substantially that the defendants did willfully combine to misadminister the county jail and to disregard the duties imposed by law. It charges misconduct in public office. Dominick Lombardo was the undersheriff, and defendants Joseph Naphas and Joseph DiMunno were guards in the county jail.
The conspiracy charged in this indictment is predicated specifically upon R.S. 2:119-1, N.J.S.A. The full scope of the conspiracy charged is that the intent and design of *523 the conspiracy was to misadminister the control and management of the county jail.
The indictment charges these defendants with 17 specific instances of overt acts wherein that conspiracy was given effect and was manifested. Upon inspection it discloses the following overt acts: On December 20, 1950, and on March 15, 1951, Lombardo took prisoners of the county jail outside the confines of the jail; that Lombardo, undersheriff, did order and direct Joseph Naphas to take out of the confines of the county jail one Cordelle Massi, and permitted him to be unattended; that the defendants on various days mentioned in the indictment did permit the wives of several prisoners confined in the jail to visit with their husband and were permitted to engage in acts of sexual intercourse with their husbands, and that the defendants accepted money for allowing such privileges; further that the defendants permitted prisoners in the jail to play games of poker for money, and permitted one, Rocky Catalano, to cut the games, that is to deduct certain portions of the money from each game.
A reading of this indictment clearly demonstrates that it presents with reasonable certainty the facts necessary to render the offense judicially apparent and that is all that is required from a pleading.
It is further argued that the indictments are vague and indefinite to the extent of involving the hazard of double jeopardy, and that they come short of adequately informing the defendant of the charges he is being called upon to meet. The offenses charged in the indictments upon a review of them surely do not lack clarity. Defendant is not left to any uncertainty as to the charges and accusations made against him. The indictments clearly and sufficiently set forth the charges, and there should be no confusion on the part of the defendant in the preparation of his defense.
Motions made to dismiss the indictments under consideration are denied.