**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2130-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

LAJUAN BRIGHT,

    Defendant-Appellant.

_____

Submitted April 7, 2025 – Decided July 22, 2025

Before Judges Jacobs and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 15-09-2302.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Abby P. Schwartz, Designated Counsel, on the brief).

William E. Reynolds, Atlantic County Prosecutor, attorney for respondent (Matthew T. Mills, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

    Defendant Lajuan Bright appeals from the January 22, 2024 order of the

Law Division dismissing his post-conviction relief ("PCR") petition. We vacate the order and remand for further proceedings.

I.

In the early morning of June 22, 2014, at the age of sixteen, defendant left his home in Atlantic City in violation of a home confinement GPS monitoring bracelet imposed as a condition of juvenile probation. He met with others and traveled in a minivan to search for an individual the group intended to kill. When the van reached an intersection, it pulled up next to a Ford Explorer already stopped there. The driver of the Explorer was the individual for which the group was searching. A chase ensued, with "[t]he van and Explorer pass[ing] one another" before "several young . . . males" from the van shot at the Explorer, seriously injuring both the driver and passenger. The driver sustained serious wounds. The passenger, the driver's sister, was struck in the back by gunfire, resulting in paralysis from the waist down.

Video surveillance footage and defendant's GPS bracelet coordinates placed him at the scene of the shooting, leading to his arrest two days later. Those proofs were strengthened by additional evidence, including text messages and photographs from defendant's cellphone obtained through execution of a search warrant. On October 28, 2014, defendant pled guilty to violating terms

of juvenile probation ("VOP"). The basis for the VOP was defendant's conduct relative to breaching conditions of home confinement and the shooting. Defendant was sentenced the same day to three years' imprisonment, however, he was never transported from the Atlantic County Jail.

Although initially processed on a juvenile petition, defendant was waived to the adult Criminal Part. On September 23, 2015, an Atlantic County grand jury billed an indictment, charging defendant with: first-degree attempted murder, N.J.S.A. 2C:5-1, N.J.S.A. 2C:11-3(a)(1) and (2) (count one); second-degree conspiracy to commit attempted murder, N.J.S.A. 2C:5-2, N.J.S.A. 2C:11-3(a)(1) and (2) (count two); second-degree aggravated assault – attempt to cause serious bodily injury, N.J.S.A. 2C:12-1(b)(1) (counts three and four); second-degree possession of a weapon (firearms) for unlawful purpose, N.J.S.A. 2C:39-4(a) (count five); and second-degree unlawful possession of a weapon (handgun), N.J.S.A. 2C:39-5(b) (count six).

On May 3, 2017, approximately two-and-a-half years after he began serving his sentence for the VOP, defendant pled guilty to count one of the indictment, conspiracy to commit murder, as amended from attempted murder. N.J.S.A. 2C:5-2(a)(1) and 2C:11-3(a)(l). In exchange, the State agreed to recommend a twelve-year custodial term with an 85% period of parole

ineligibility pursuant to the No Early Release Act ("NERA"), N.J.S.A. 2C:43-7.2, and dismissal of all other remaining counts.

Notably, defense counsel completed the plea form on defendant's behalf. In response to question 10, "Are you presently serving a custodial sentence on another charge?" counsel circled "No." Question 10a inquires: "Do you understand that a guilty plea may affect your parole eligibility?" In response, counsel circled "N/A." In response to question 21, "List any other promises or representations that have been made by you, the prosecutor, your defense attorney, or anyone else as part of this plea of guilty," defense counsel wrote, "Defendant to receive all lawful jail credits dating back to the date of arrest[,] on or about June 22, 2014." After finding defendant's allocution adequate and the plea entered freely and voluntarily, the court accepted defendant's guilty plea to the amended charge.

At sentencing on June 16, 2017, the court awarded 126 days jail-time credit toward the conspiracy charge, from June 24, 2014 to October 27, 2014. The court awarded gap-time credit of 963 days, from October 28, 2014, the day of defendant's sentence to the VOP, through June 16, 2017. The court specifically inquired about credits:

THE COURT:  And the [p]resentence [r]eport shows credit, jail credits of 126 days, GAP credits of 956, is that right?

DEFENSE COUNSEL:  That's correct, Your Honor.

THE COURT:  [Mr. Prosecutor]?

ASSISTANT PROSECUTOR:  Yes, Judge.

THE COURT:  Okay.

COURT AIDE: And, Judge, that should actually be updated to 963.

THE COURT:  963.  Mr. Bright, anything you want to tell me?

DEFENDANT:  No.

The court found aggravating factors three, six, and nine, determined that the aggravating factors clearly outweighed the mitigating factors, sentenced defendant to the recommended term of twelve years subject to NERA, and imposed mandatory fines and penalties.

Petition for Post-Conviction Relief

Following his incarceration, defendant met with the classification department.  He was informed that he would not be released until April 23, 2027—more than twelve years and ten months from the date of his arrest.  This projected release date exceeded his eligibility for release under NERA, which

5

otherwise would have ripened after serving ten years and two-and-a-half months. On January 25, 2021, defendant sent the Atlantic County Superior Court, Criminal Division, a letter inquiring about his jail credit, writing:

> According to New Jersey Court Rules, Rule 3:21-[8], a defendant shall receive credit on the term of custodial sentence for any time served in custody in jail, or in a state hospital, between the date of arrest and the imposition of sentence. On the [j]udgment of [c]onviction in the above-referenced matter, I was granted a calculation of 126 days jail credit, but I assert that am entitled to a total of 963 days jail credit. The 963 days were granted to me, but as GAP [t]ime. It was my understanding those days were to be jail credits, not Gap-time.[1]

Defendant asked the court to amend his judgment of conviction, or in the alternative, provide him with a written letter explaining the denial of his request. On February 8, 2021, the Division sent defendant a letter explaining that "time spent in prison on the VOP should be awarded as Gap-time when sentenced prior to sentencing on [his] new case."

Thereafter, defendant prepared and filed a self-represented petition for PCR in 2022, and a supplemental petition on April 30, 2023. He contended his

---

[1] We note that defendant erroneously requested a total of 963 days of jail credit, when, logically, his request should have been for 1,089 days. This total consists of 126 days from the date of arrest through October 27, 2014 (covering the period from June 24, 2014, to October 27, 2014), plus 963 days for the period from October 28, 2014, through June 17, 2017.

6

defense counsel was ineffective for

> failing to hold the juvenile matter until after the adult
> matter resolved[,] failing to explain the situation to his
> client at both the juvenile and adult pleas so his plea
> would be knowing and voluntary[,] failing to negotiate
> jail credits on his behalf and for failing to alert the court
> to any misunderstanding at sentencing when the court
> ordered GAP [time] credits.

Defendant's trial counsel submitted an affidavit in support of the PCR application, stating:

> I did not explain Gap-time to Lajuan as we had
> worked into the language of the guilty plea very
> specific negotiated jail credits[,] and we believed that
> Lajuan would serve an aggregate total sentence of 12
> years in New Jersey State Prison with 85% to be served
> under the No Early Release Act, which would amount
> to the 10[- year] term that the State felt was appropriate
> in this case. 85% of 12 years is a little bit more than 10
> years. Based on the negotiated jail credits that
> purposely and specifically written into the plea
> agreement, it was [defense counsel's] belief that
> [defendant] would be eligible for parole sometime in
> the year 2024.
>
> [(Emphasis added).]

PCR counsel contended that trial counsel's performance was deficient because it "deprive[d] the court of the opportunity to make sure that [defendant] knew what he was doing when he pled." Defendant was prejudiced, considering he was denied several opportunities to secure a better plea deal. According to

7

PCR counsel, "[c]ompetent counsel would have made a difference in a few ways[,]" by simultaneously addressing both charges in adult court, persuading the prosecutor to offer a shorter sentence on the adult charge in light of the three years defendant was serving on the juvenile charge, or negotiating with the prosecutor to count the three years as jail credit in the form of "negotiated jail credits."

In opposition, the State argued that to prevail on his PCR, defendant would have to show he "would have insisted on going to trial rather than pleading guilty." The only available remedy, therefore, "would be withdraw[ing]" the guilty plea and placing defendant "back on the list heading towards trial."

Following oral argument, the court denied the PCR in an order dated January 22, 2024, accompanied by an eighteen-page written decision. The court first noted Rule 3:22-4 bars claims not raised in previous proceedings and concluded, "[p]etitioner fails to show that the issue of gap-time was not discoverable earlier through the exercise of reasonable diligence." The court observed, "[g]ap-time was discussed numerously with the petitioner before and throughout sentencing," adding that the "materiality of the claim is found within plea transcripts, sentencing transcripts, and plea forms." The court found that "[p]etitioner's assertions now to the contrary are unavailing and are contradicted

by the record." The court concluded that defendant did not present a prima facie case for ineffective assistance of counsel, noting that "[t]rial counsel's advice, even if erroneous, was not so wide of the mark so to trigger Cronic[,]" cited for the tenet that "[t]he accused is entitled to a reasonably competent attorney whose advice is within the range of competence demanded of attorneys in criminal cases." United States v. Cronic, 466 U.S. 648, 649 (1984).

Regarding the prejudice defendant might suffer even if counsel were ineffective, the PCR court highlighted that defendant had "not assert[ed] his innocence nor claim that he would have sought a trial if he did not accept the plea." The court also found that "[d]espite trial counsel's recollections of plea negotiations, there is stated no rational basis to reject an otherwise favorable and lenient plea bargain solely based on how the [p]etitioner's time in pre-disposition custody would be treated at time of sentencing."

On appeal, defendant raises a single point for consideration:

> DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL AS DEFENDANT WAS NOT ADVISED THAT HIS TIME IN CUSTODY WHEN HE WAS SERVING TIME FOR A JUVENILE VIOLATION OF PROBATION WOULD BE GAP CREDIT RATHER THAN JAIL CREDITS. DEFENDANT WAS LED TO BELIEVE THAT ALL THE TIME STARTING FROM HIS ARREST WOULD BE APPLIED AS JAIL TIME. THIS

DENIED DEFENDANT OF HIS RIGHT TO DUE PROCESS AND A FAIR TRIAL.

## II.

Because the court did not hold an evidentiary hearing, we review both the factual inferences drawn by the judge from the record and the judge's legal conclusions de novo. State v. Aburoumi, 464 N.J. Super. 326, 338 (App. Div. 2020) (citing State v. Jackson, 454 N.J. Super. 284, 291 (App. Div. 2018)); see also State v. Nash, 212 N.J. 518, 540-41 (2013) (citing State v. Harris, 181 N.J. 391, 415-16 (2004)). To establish a PCR claim of ineffective assistance of counsel, a defendant must satisfy the familiar two-pronged test formulated in Strickland v. Washington, 466 U.S. 668, 687 (1984) and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987), first by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment," then by demonstrating "that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687; accord Fritz, 105 N.J. at 52. Defendant must show by a "reasonable probability" the deficient performance affected the outcome of the proceeding. Fritz, 105 N.J. at 58.

A defendant bears the burden of establishing a prima facie claim for relief post-conviction. State v. Gaitan, 209 N.J. 339, 350 (2012). A petitioner must

"do more than make bald assertions that he was denied the effective assistance of counsel" to establish a prima facie claim. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). "The failure to raise unsuccessful legal arguments does not constitute ineffective assistance of counsel." State v. Worlock, 117 N.J. 596, 625 (1990).

There is a strong presumption trial counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. Further, because prejudice is not presumed, the defendant must show "how specific errors of counsel undermined the reliability of the finding of guilt." Cronic, 466 U.S. at 659 n.26; see also Fritz, 105 N.J. at 52 ("[P]rejudice must be proved; it is not presumed."). "The test is not whether defense counsel could have done better, but whether [they] met the constitutional threshold for effectiveness." Nash, 212 N.J. at 543 (citing Fritz, 105 N.J. at 52). The court should review counsel's performance in the context of the evidence against defendant at the time of the plea or trial. State v. Castagna, 187 N.J. 293, 314-15 (2006).

On appeal, defendant maintains he received ineffective assistance of counsel because he was not informed that, upon being sentenced for the VOP, he would be legally entitled only to gap-time credit rather than standard jail

11

credit for the time he spent incarcerated on the VOP charge awaiting final disposition of the adult matter. As a result, the actual sentence length exceeded what he and his counsel understood at the time of the plea and sentence. The State argues, and the PCR court found, that defendant's claim is procedurally barred under Rule 3:22-4, as defendant could have raised the issue of gap-time credit before or at the time of sentence.

Rule 3:22-4 and the Ineffectiveness Prong

Rule 3:22-4(a) provides:

> (a) Any ground for relief not raised in the proceedings resulting in the conviction . . . or in any appeal taken in any such proceedings is barred from assertion in a proceeding under this rule unless the court on motion or at the hearing finds:
>
> > (1) that the ground for relief not previously asserted could not reasonably have been raised in any prior proceeding[.]

The State contends that defendant "was aware of what jail credits were and that he expressed concerns regarding the accuracy of gap and jail credits." In support of this argument, the State points to correspondence from defendant to the Criminal Division in which he wrote "it was my understanding that those days were to be jail credits, not GAP time." The State argues that defendant's "letter demonstrates that he was aware of the difference between jail credits and

12

GAP time." The State continues, "[i]n [d]efendant's affidavit, he states that he discovered that his release date was 202[7,] not 202[4]. The [d]efendant also admits that he 'thought the GAP[-]time designation was some kind of mistake.'" Likewise, the PCR ruling found that "[g]ap-time was discussed numerously with the petitioner before and throughout sentencing. Petitioner's assertions now to the contrary are unavailing and are contradicted by the record."

Our review of the record counters these assessments. First, the correspondence cited by the State was generated post-sentence and reflects defendant's understanding of gap-time credit's consequence, not its initial significance. The State identifies nothing in the record to indicate defendant was informed, or understood prior to sentencing, that the application of gap-time credit would result in a period of actual incarceration exceeding the negotiated twelve-year term. Stated otherwise, defendant's post-sentencing familiarity with the concept of gap-time does not support a finding that he understood its meaning or significance prior to sentencing.

Second, our thorough review of the record does not reveal "numerous[]" mentions or discussion of gap-time, as the PCR court found. There was no mention of gap-time in the plea proceeding, only an errant reference to what would constitute gap-time in the plea form at question 10, and a single reference

13

at sentencing. That single reference concerned of a correction to the presentence report. The court's inquiry of defendant, "Mr. Bright, do you have anything you'd like to tell me?" cannot be fairly understood to reference gap-time. After all, the court inquires whether defendant has anything to "tell" the court, not "ask" the court. In proper context, the question should be construed to be an invitation for defendant to speak at sentence, customarily to the circumstances of the underlying offense, expressions of remorse, or comment on aggravating and mitigating factors.

The PCR court referenced this single mention of gap-time at the time of sentence, interpreting same to "show that gap credits were <u>clearly communicated</u> in the presence of [p]etititioner, regardless if [p]etititioner understood what gap credits would mean in terms of his sentence." Here, we must emphasize the distinction between mere mention and "communication." Communication is defined as "[t]he interchange of messages or ideas by speech, writing, gestures, or conduct; the process of <u>bringing an idea to another's perception</u>." <u>Black's Law Dictionary</u> 350 (12th ed. 2024) (emphasis added). A fair reading of the sentencing court's single reference cannot be construed to have brought the idea of gap-time to defendant's perception.

It may be safely stated that, had mandated sentencing procedures been

properly followed in this case, defendant would have been appropriately deemed capable of reasonably raising the claim now at issue. Those procedures are set forth under Rule 3:21-4(k), which provides in pertinent part:

> **Statement of Estimated Real Time to Be Served.** If defendant is sentenced to prison or jail, at the time sentence is imposed the judge shall state the approximate period of time defendant will actually serve in custody according to the then current State Parole Board "Parole Eligibility Tables."

Compliance with this provision would have afforded defendant plain and immediate notice that, notwithstanding his having already been incarcerated for two years, eleven months, and twenty-nine days (1,089 days) as of the sentence date, he remained subject to an additional mandatory ten years, and would become eligible for parole on April 23, 2027 under NERA. Moreover, he would have been made aware that he would receive only 126 days of actual credit toward parole eligibility. As the PCR court correctly observed in its decision, "gap-time credits are subtracted from the back end of a sentence and do not reduce the parole ineligibility period." See State v. Hernandez, 208 N.J. 24, 38-39 (2012); N.J.S.A. 2C:44-5(b).

In evaluating the reasonableness of the defendant's ability to recognize the grounds for his claim of relief, it is significant that he was sixteen years old at the time he committed the offense. At the time of his arrest for the present

charges, he had had four prior arrests, none of which resulted in dispositions involving gap-time—a concept not easily grasped, even by seasoned practitioners. As Judge Baime aptly observed, "[t]he mere mention of gap time credits makes stolid judges tremble. The law books contain opinion upon opinion dealing with this arcane subject . . . ." State v. Guaman, 271 N.J. Super. 130, 135 (App. Div. 1994). A concept so arcane cannot reasonably be expected to be fully understood by a youth at first mention, particularly when counsel's erroneous completion of the plea form effectively rendered it null for explanatory purposes.

Our case law has recognized that a defendant's misunderstanding or lack of awareness regarding the application of jail credits may serve as a valid basis for post-conviction relief. In State v. Alevras, 213 N.J. Super. 331, 338-39 (App. Div. 1986), Judge Stern wrote:

> We acknowledge that, at least in certain circumstances, a defendant's misunderstanding of credits may affect his understanding of the maximum exposure. Hence, a guilty plea based on this misunderstanding may fail to satisfy the constitutional requirement that a plea be voluntarily, intelligently and knowingly entered, at least where the denial of the expected credits results in the imposition of a sentence longer in duration than the maximum contemplated. Cf. State v. Kovack, 91 N.J. 476 (1982); State v. Jones, 184 N.J. Super. 626 (Law Div. 1982).

16

This is such a circumstance. Trial counsel's admitted failure to meaningfully discuss the distinction between "lawful credits" and gap-time credits with defendant constitutes more than prima facie proof that his assistance was "not within the range of competence demanded of attorneys in criminal cases," meeting the first prong of Strickland/Fritz. Tollett v. Henderson, 411 U.S. 258, 266 (1973). Also, this case falls within the scope of Rule 3:22-4(a)(2), in which "enforcement of the bar to preclude claims, including one for ineffective assistance of counsel, would result in fundamental injustice."

The Prejudice Prong

The second, or "prejudice," prong of the Strickland/Fritz test, is here problematic. As the State and the PCR court have observed, ordinarily, a defendant must show "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." State v. DiFrisco, 137 N.J. 434, 457 (1994) (alteration in original) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). Alternatively, a defendant may "allege . . . special circumstances that would have supported the conclusion that he placed particular emphasis on his parole eligibility in deciding whether or not to plead guilty." Hill, 474 U.S. at 53. Although there is no sworn statement by defendant to this effect, PCR counsel represents that

defendant does not wish to retract his plea. At the least, an evidentiary hearing is needed to explore this aspect of the case. Beyond this, counsel may explore on remand whether defendant is entitled to negotiated credits.

The interests of justice require creation of a record explaining why trial counsel agreed to resolve the juvenile VOP in a manner that yielded accumulation of predominantly gap-time credits. At present, the sole explanation appears in the oral representations of PCR counsel, who stated at argument:

> [trial] attorney advised him to plead guilty to the violation of probation in the juvenile matter so that he could get moved out to the adult jail and into a youth facility where he would probably – where they anticipated he would be safer while . . . the adult case was pending. He never actually did get moved. He spent all the time in the adult jail.

On its face, this rationale for pleading early to the VOP – at the expense of receiving jail credits on the adult charge – may constitute grounds for awarding negotiated or equitable credits.

We are quick to add, however, that as the PCR court wrote in its decision:

> Crucially, "where gap-time credits are applicable, the judge has no discretion to award jail credits instead." State v. Rippy. 431 N.J. Super. 338, 348 (App Div. 2013) (citing Hernandez, 208 N.J. at 48-49). Consideration of statutorily mandated gap-time credits is not discretionary. Sheil v. N.J. State Parole Bd., 244

N.J. Super. 521, 526 (App. Div. 1990); see State v. Richardson, 208 N.J. Super. 399 (App. Div. 1986).

[(citations reformatted).]

Even assuming defendant has not sufficiently demonstrated that parole eligibility was a determinative factor in his decision to plead guilty, trial counsel's lack of thoroughness nonetheless deprived defendant of the opportunity to secure a shorter aggregate sentence. Although it may ultimately prove that defendant has achieved only a pyrrhic victory, the record must, at a minimum, be further developed to definitively establish why counsel took his course and defendant's position regarding plea withdrawal. In making this determination, we are guided by precedent that emphasizes not only how counsel's conduct is evaluated, but also why it occurred:

> Generally, a claim of ineffective assistance of counsel cannot be raised on direct appeal. Rather, defendant must develop a record at a hearing at which counsel can explain the reasons for his conduct and inaction and at which the trial judge can rule upon the claims[,] including the issue of prejudice.
>
> [State v. Sparano, 249 N.J. Super. 411, 419 (App. Div. 1991) (emphasis added).]

In sum, there is prima facie evidence that trial counsel's performance fell below an objective standard of reasonableness, prejudicing defendant. Defendant is entitled to an evidentiary hearing. We note that the trial judge and

19

presiding judge "perceive[ed] a potential conflict should an evidentiary hearing become necessary," resulting in the presiding judge re-assigning the case to himself.  On remand, consistent with this concern, the hearing may be conducted by the original trial judge or re-assigned to another judge as the presiding judge deems appropriate in his sound discretion.  The remand shall be completed within 90 days of issuance of this opinion, unless the parties, by consent, agree to extend that deadline further.

Vacated and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Hanley*

Clerk of the Appellate Division