ELIHU BLAU *v*. STATE OF MISSISSIPPI.

CRIMINAL PROCEDURE. *Grand jury. Influenced by court. Indictment quashed. Code 1892, §§ 120, 1121. Dealing in futures.*

It is sufficient ground for the quashal of a subsequently returned indictment (under Code 1892, §§ 1120, 1121, making it a crime to deal in futures) that the grand jury sought to be finally discharged without indicting defendant and the court refused to discharge them, and thereupon instructed them specifically touching the criminal character of defendant's business, saying that the law was plain and the court of opinion that they had sufficient evidence to find an indictment, that other grand juries had indicted, and that the business in which defendant was engaged was a flagrant violation of the statute.

FROM the circuit court of Lauderdale county.

HON. GUION Q. HALL, Judge.

Blau, appellant, was indicted, tried and convicted, under Code 1892, §§ 1120, 1121, for dealing in futures, and appealed to the supreme court. The facts upon which the case was decided are fully stated in the opinion.

*R. F. Cochran* and *S. A. Witherspoon,* for appellant.

If the court has the lawful right to compel a grand jury to return indictments, when they have refused to do so, then the bill of rights and constitution should be annulled and the grand jury system abolished. *Clair* v. *State,* 28 L. R. A., 367; 2 Hale, P. C., 161; 1 Chitty on Criminal Law, 312.

The trend of judicial sentiment in this country is illustrated by the language of Justice Field, of the supreme court of the United States, who, in charging the grand jury in the year 1872, said it was "designed as a means of not only bringing to trial persons accused of public offenses upon just ground, but also as a means of protecting the citizens against unfounded

accusation, whether it comes from government or be prompted by partisan passion or private enmity." 2 Sawy., 669.

There are not many cases on the question of inflammatory or prejudicial charges to the grand jury, the judges generally recognizing the propriety of defining the duties of the grand jury in calling their attention to crimes generally, and then to particular statutes, but refraining from expressing any opinion as to the guilt or innocence of any particular person. But it is believed that any intimation by the court that a particular person has been guilty of any particular crime, or that evidence can be easily found which will convict them, or that the grand jury should indict them, would vitiate an indictment, if proper objection is taken, except in Louisiana.

A motion was the proper proceeding to raise the question of the validity of the indictment. Code 1892, § 1355.

*J. N. Flowers,* assistant attorney general, for appellee.

Argued orally by *R. F. Cochran* and *S. A. Witherspoon,* for appellant, and by *Monroe McClurg,* attorney general, for appellee.

PRICE, J., delivered the opinion of the court.

The appellant was indicted by the grand jury of Lauderdale county January, 1902, for violating sections 1120, 1121, of the Code of 1902, against dealing in futures. The defendant filed the following motion to quash the indictment against him:

"And now comes the defendant, in his own proper person, and moves the court to quash the indictment herein, and in support of said motion he assigns the following reasons:

"First. Because the Hon. G. Q. Hall, judge of the tenth judicial district, at the January term of the circuit court, 1902, charged the grand jury at length on the criminal character of the business of this defendant, and the grand jury, after being in session two or three weeks, and after having examined

numerous witnesses touching the character and kind of business in which the defendant is engaged, failed, after a full investigation, to indict the defendant, and the said grand jury, after finishing the work before it, made its final report to the court, and asked to be discharged, and thereupon the court refused to receive their report, and had the grand jury seated, and proceeded in a lengthy charge to again specifically charge the grand jury in reference to the criminal character of the business engaged in by this defendant.

"Second. Because the Hon. G. Q. Hall, judge of the tenth judicial district, in said second charge to said grand jury, among other things, said to the grand jury: 'I don't know why it is you have not returned indictments against these parties (meaning this defendant). The law is plain and clear, and you have had, I understand, sufficient evidence before you to find indictments. The business has been outlawed in every state in the Union, so far as I am informed, except perhaps in New York and Louisiana. It is like a poker game, where the owner of the poker table has a "rake off," no matter who wins or loses, and it is demoralizing to the manhood of the community. Previous grand juries indicted some of these parties, and they immediately drew their money out of the banks and fled from the state. The cases have not been tried yet, but I will attend to them in due time. They do not deliver, and make no pretense of delivering, a bale of cotton, and the business is a flagrant violation of the statutes which I have read to you. If you do not indict these parties (meaning this defendant), this town will be overrun with bucket shops before another grand jury meets.'

"Third. Because the said grand jury, after the said judge had delivered the said second charge, and being influenced and induced to indict this defendant by reason thereof, returned the indictment herein, which was not the voluntary act of the grand jury. It is therefore void.

"Fourth.   For other reasons to be assigned at the hearing.
E. B. Blau, by A. S. Witherspoon and R. F. Cochran, attorneys.

"Filed July 9, 1902.   D. W. Cameron, Clerk."

The defendant then and there offered to introduce evidence
to prove the facts set out in the motion, but the court stated that
it did not care to hear proof, as the facts stated in the motion
were substantially true, and were substantially stated in the
charge of the court to the grand jury as alleged in the said
motion; but the court denied said motion and overruled the
same, to which ruling and decision of the court the defendant,
by his counsel, then and there excepted.

"And because the matters aforesaid do not fully appear of
record the defendant presents this his bill of exceptions, and
prays the same may be signed and sealed by the judge of this
court, pursuant to the statute, etc., which is accordingly done.
G. Q. Hall, Judge.

"Filed July 18, 1902.   D. W. Cameron, Clerk."

This motion was overruled in the following words: "This
cause coming on to be heard upon motion of defendant to quash
the indictments herein, and the court, having considered the
same, doth order that said motions be overruled and denied.
To which action of the court the defendant then and there
excepted," and filed his special bill of exceptions.

Should this motion to quash have been sustained?   If this
question be answered in the affirmative, a consideration of the
numerous other errors assigned will be unnecessary.   This
presents to some extent a new question in this state.   In *Allen*
v. *State,* 61 Miss., 627, there was a plea in abatement alleging
that one or more of the grand jurors were intoxicated when the
bill was found.   This court held, in an opinion by Justice
Chalmers, that the grand jury is not under the guidance and
control of the court, like the petit jury is, while considering
their verdict, and should not be so judged.   In *Durr* v. *The*
*State,* 53 Miss., 427, this court sustained the motion to quash

the indictment because the attorney assisting in the prosecution by leave of the court went before the grand jury with witnesses and acted for the district attorney in framing the indictment. In *Welch* v. *State,* 68 Miss., 341, 8 South., 673 (opinion by Justice Campbell), a plea in abatement was sustained because the attorney for the prosecution procured himself to be secured as a witness before the grand jury, and, thus introduced, addressed the grand jury, urging them to find an indictment. The court held that, while illegal or insufficient evidence before the grand jury will not be inquired into, yet improper influence to secure the indictment should be. "In vain the constitution protests against being proceeded against criminally, by information, for an indictable offense, except in the cases mentioned, if grand juries are to be swayed by malice or prejudice, or subjected to other influences than those recognized by law as legitimate and proper to guide them in their secret inquest. 'The recognition of such a mode of reaching grand juries would introduce a flood of evils, disastrous to the purity of the administration of criminal justice, and subversive of all public confidence in the action of these bodies.'" In *Wilson* v. *State,* 70 Miss., 595, 13 South., 225, 35 Am. St. Rep., 664, this court said: "Immunity from persecution for indictable offenses, except by presentment by the grand jury, is declared and preserved by the organic law of this and all other states; and though, by reason of the secrecy of the proceedings before that body, its action is seldom brought in review, it cannot be doubted that one whose acts are there the subject of investigation is as much entitled to the just, impartial, and unbiased judgment of that body as he is to that of the petit jury on his final trial, nor that it is as essential before the one body as the other that private ill will or malevolence shall be excluded." It is said by Thompson & Merriam on Juries, at page 569, that "in the struggles which at times arose in England between the powers of the king and the rights of the subjects, the

grand jury often stood as a barrier against prosecution in the king's name, until at length it came to be regarded as an institution by which the subjects were rendered secure against the oppression from unfounded prosecution of the crown." And at page 651 the same authority says "that in certain respects the grand jury is to be considered as enjoying a distinct autonomy; that, after they have been organized and charged, part of their legal function is to be performed by them as a separate and independent body, acting by themselves, and apart from the court. The court is neither the keeper of their conscience nor can control it in finding facts, but in many other respects they are, of course, subject to the control of the court, and dependent upon it for the execution of powers necessary to the prosecution of their inquiries. The ancient practice of forcing grand juries, by fines and imprisonment, to find indictments against their convictions, is now among civilized nations regarded as one of the barbarities of the common law, and to attempt anything of the kind now would be criminal. The grand jury may at all reasonable times during the discharge of their duties appeal either to the court or the prosecuting attorney for advice, but this advice must be restricted to matter of law, sufficiency of service, and proper dispatch of the public business. Neither the court nor this officer can say to the grand jury that the facts, as shown by the evidence, are sufficient to authorize them to find a bill. As upon a trial by a petit jury the judge cannot say that they should return a verdict of guilty, so here the court cannot advise them upon the question of a true bill or not a true bill." In volume 17 (2d ed.) Am. & Eng. Enc. of Law, p. 1273, we find the text: "The court, in charging the grand jury, should not undertake to tell that body that there is evidence warranting it in indicting parties for the violation of particular laws, nor otherwise invade the province of the grand jury." The same doctrine is laid down in *Clair* v. *State*, 40 Neb., 534, 59 N. W., 118, 28 L. R. A., 367, and it is a recent,

well-considered case, with exhaustive notes. It is there said
"that a finding by the grand jury necessarily includes two ele-
ments: First, the *corpus delicti;* second, the finding that the of-
fense named was committed by the person charged. Both the
facts named must be found by the grand jury, and cannot be
dictated by the court." But in the case we have under consider-
ation, after the grand jury had been in session for weeks,
heard all the witnesses concerning the defendant's business,
made their final report, and asked to be discharged, without
finding a bill against the defendant, the court refused to accept
the report and discharge them, but proceeded to give them a
special charge. He charged that the crimes had been commit-
ted, and that the defendant was the guilty party; that they had
sufficient evidence before them to find indictments; and then
the grand jury retired, and involuntarily returned an indict-
ment against the defendant, charging him with dealing in fu-
tures. This is just the thing that Sir Matthew Hale sought to
prevent when he said: "The privilege of an Englishman is that
his life shall not be drawn in danger without due presentment
or indictment, and this would be but a slender screen or safe-
guard if every justice of the peace, or commissioner of oyer or
terminer, or gaol delivery, may make the grand jury present
what he pleases," etc. Justice Field, of the supreme court of
the United States, in charging a grand jury in 1872, said: "A
grand jury was designed as a means of not only bringing to
trial persons accused of public offenses upon just grounds, but
also as a means of protecting the citizen against unfounded ac-
cusation, whether it come from government or be prompted by
partisan passion or private enmity."

These authorities show the trend of judicial sentiment in
this country. "The grand jury stands as the great inquest be-
tween the government and the people; the bulwark between en-
mity, hatred, and ill-will on the one side and justice and fair-
dealing between man and man on the other; a fortification

that shelters the innocent against every assailant, and protects the people against every crime. Standing as a co-ordinate branch of our criminal jurisprudence, . . . influence its findings by courts, officers, or laymen, and you pave the way to influence its deliberations by corrupt means. You place the entering wedge, which goes to the foundation of the liberties of the people. If the court has the right to compel the grand jury to return an indictment after that body has refused to do so, then that body loses its independent function, the purposes of its establishment, the confidence of the people, and should be abolished."

After a careful examination of the authorities, we fail to find any reported case where it was so clearly undertaken to dictate to and coerce from the grand jury an indictment. In directing the attention of the grand jury to particular offenses or classes of offenses, to crime and the necessity of suppressing it, a very large, necessary, and useful discretion is conferred upon the presiding judge, and this court will not undertake to control that discretion unless manifestly abused. In this case the court has gone too far. We must keep "that body" pure, its findings unaffected by power, fear, sympathy, or public sentiment. In that way only can it protect the rich, the poor, the humblest, and the greatest in the land alike.

Motion to quash should have been sustained.

*Reversed and remanded.*