36 N.J. Super. 314 (1955)
115 A.2d 585
THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
DONALD SPENCE, CARROLL PERKINS, TRADING AS PERKINS NURSERY, HENRY J. KNOLL, TRADING AS HOLLYWOOD FLORIST, HERMAN R. ZINN AND MITTERMEYER NURSERY CORPORATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 20, 1955.
Decided July 6, 1955.
*315 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Frank J.V. Gimino, Assistant Prosecutor, argued the cause for appellant (Mr. Frederick T. Law, County Prosecutor).
Mr. James A. Major argued the cause for respondent Carroll Perkins.
Mr. Milton T. Lasher argued the cause for respondents Herman R. Zinn and Mittermeyer Nursery Corporation.
Mr. Robert H. Wall argued the cause for respondent Henry J. Knoll (Mr. Samuel Schwartz, attorney; Mr. Louis K. Wilder, of counsel).
Messrs. Van Riper & Belmont, attorneys for respondent Donald Spence (Mr. Paul N. Belmont, of counsel).
*316 The opinion of the court was delivered by JAYNE, J.A.D.
It appears to be acknowledged by all counsel that the indictment the validity of which we are requested to determine is unfashionably composed. Its informality in point of its questionable import and resultant legality has occasioned the submission to us of the several divergent aspects in which it may be perceived. We have given thoughtful consideration to all of the constructive advocacies that counsel have tossed into the judicial cauldron.
The indictment contains but one count, the seventh paragraph of which constitutes the bone of contention. We quote it:
"7. That on or about the first day of August, 1952, and from thence continuously to and including the day of the taking of this inquisition, at the City of Jersey City, County of Hudson, and within the jurisdiction of this Court, the said DONALD SPENCE, CARROLL PERKINS, trading as Perkins Nursery, HENRY J. KNOLL, trading as Hollywood Florist, HERMAN R. ZINN, and MITTERMEYER NURSERY CORPORATION, all late of the City of Jersey City, County of Hudson aforesaid, did unlawfully, knowingly and corruptly conspire, combine, confederate and agree together, between and amongst themselves, as much as in them lay, to pervert and obstruct in the said City of Jersey City the due administration of the public bidding laws of the State of New Jersey, to wit, R.S. 40:50-1, by causing the said City of Jersey City to enter into contracts for the doing of work and for the furnishing of materials, supplies, and labor where the sum to be expended exceeded the sum of $1,000.00 without said municipality first publicly advertising for bids therefor and without said municipality awarding the contracts to the lowest responsible bidder, and did unlawfully and corruptly conspire, combine, confederate and agree together to cheat and defraud the said City of Jersey City of its moneys by means of unlawfully and corruptly making and causing to be made divers fraudulent contracts between the said City of Jersey City and the said CARROLL PERKINS, trading as Perkins Nursery; HENRY J. KNOLL, trading as Hollywood Florist; HERMAN R. ZINN; and MITTERMEYER NURSERY CORPORATION for the doing of work and the furnishing of materials, supplies and labor at grossly excessive prices and at a sum in excess of $26,000.00 without public advertisement by the said municipality for bids therefor and without award of contract to the lowest responsible bidder, and by means of the said DONALD SPENCE unlawfully and corruptly prevailing upon the Board of Commissioners of the City of Jersey City to purchase for the said municipality without competitive bidding and at grossly *317 excessive prices large quantities of materials, supplies, trees, hedges, shrubbery and the like from the said conspirators at exorbitant prices and at prices greatly in excess of reasonable value; and by causing the said City of Jersey City to pay large sums of money for work alleged to be done by the said CARROLL PERKINS, trading as Perkins Nursery, and HENRY J. KNOLL, trading as Hollywood Florist, who, in fact, had rendered no work and who had not furnished any materials, supplies, trees, hedges, shrubbery or any of the like to the said City of Jersey City, and by means of causing false and fraudulent claims and vouchers for the payment of moneys by the said City of Jersey City to be prepared and executed, and by the further means of recommending to the said Board of Commissioners of the said City of Jersey City that resolutions be adopted by the said Board of Commissioners of the said City of Jersey City authorizing payment of moneys to the said CARROLL PERKINS, trading as Perkins Nursery; HENRY J. KNOLL, trading as Hollywood Florist; HERMAN R. ZINN; and MITTERMEYER NURSERY CORPORATION, mentioned in the said false and fraudulent claims and vouchers for the doing of work and furnishing of materials, supplies and labor, alleged to have been furnished, performed and rendered by the said CARROLL PERKINS, trading as Perkins Nursery; HENRY J. KNOLL, trading as Hollywood Florist; HERMAN R. ZINN; and MITTERMEYER NURSERY CORPORATION to the said City of Jersey City, and by the further means of obtaining and receiving by them, the said CARROLL PERKINS, trading as Perkins Nursery; HENRY J. KNOLL, trading as Hollywood Florist; HERMAN R. ZINN; and MITTERMEYER NURSERY CORPORATION, of large sums of moneys paid by the said City of Jersey City as the result of the submission of the said false and fraudulent claims and vouchers to the said Board of Commissioners of the said City of Jersey City, contrary to the provisions of N.J.S. 2A:98-1, and against the peace of this State, the Government and dignity of the same."
We have italicized merely to indicate the sources from which the respective arguments arise. It is also feasible here to explain that the succeeding paragraphs, 8 to 68 inclusive, are devoted to the allegations of overt acts.
In response to the motions of counsel representing the defendants, the judge of the Hudson County Court concluded that the indictment alleged two separate unlawful conspiracies in the one count, the one to violate the public bidding laws of the State, and the other to cheat and defraud the City of Jersey City. He accordingly resolved that the indictment was duplicitous, not permissibly amendable, and *318 should be dismissed. It was so ordered, and from that adjudication the State prosecutes the present appeal.
We initiate our examination of the structure of this indictment with a consciousness of the progressive elimination of those technical and artistic objections so cogently regarded in the days of the early common law, yet also with a predominant realization of the importance of a firm adherence to those basic and fundamental principles which safeguard the right of the accused adequately to be informed of the "nature and cause of the accusation." Vide, State v. Winne, 12 N.J. 152 (1953); State v. Lefante, 12 N.J. 505 (1953); State v. Engels, 32 N.J. Super. 1, 6 (App. Div. 1954); State v. Hanly, 33 N.J. Super. 549 (Law Div. 1955).
Then, too, we assume that the judge perceived on the face of the indictment "the clearest and plainest" ground for concluding, as he did, that the indictment is "palpably defective." State v. Davidson, 116 N.J.L. 325, 328 (Sup. Ct. 1936); State v. Weleck, 10 N.J. 355, 364 (1952); State v. Russo, 6 N.J. Super. 250, 254 (App. Div. 1950), certification denied 4 N.J. 456 (1950). Since the motion to dismiss was one appropriately addressed to his judicial discretion, our appellate task is to determine whether in our opinion he mistakenly exercised it. In re Longo, 124 N.J.L. 176, 181 (E. & A. 1940); State v. Collins, 2 N.J. 406, 411 (1949); State v. Bunk, 4 N.J. 482, 485 (1950).
The sole reason announced by the court for the dismissal of the indictment is that it manifestly offends the rule forbidding the allegation of separate and distinct offenses in the one count of the indictment.
The associated ruling was that the duplicity was irreparable by means of amendment or excision. We pause to confess that we do not understand that the rule declaring that duplicity is positively fatal to an indictment has ever inhabited the procedural law of our State. Vide, State v. Lamb, 81 N.J.L. 234, 239 (Sup. Ct. 1911).
We differ, however, with the judge of the County Court in his determination that the indictment is conspicuously duplicitous. We recall the elucidative comments of Chief Justice *319 Beasley in Noyes v. State, 41 N.J.L. 418, 421 (Sup. Ct. 1879), affirmed 43 N.J.L. 672 (E. & A. 1881), which may be aptly appropriated here:
"* * * But the fundamental fallacy in the position on the part of the defence consists in this, that it confounds the crime, which is the conspiracy, with the objects of the conspiracy. A combination to commit several crimes is a single offense, and the offence can always be laid according to the truth. No matter how many violations of law may be concerted by the confederates, if the concert take place at one time, the crime is single. Therefore in this case, if it were the fact that these conspirators on a single occasion confederated to violate the law in question in two distinct particulars, with respect to such combination, the criminal act was a unit, and it appears as such on the face of this indictment."
In State v. Profita, 114 N.J.L. 334, 338 (E. & A. 1935), Justice Case explained:
"* * * The crime of conspiracy is not to be confounded with the objects of the conspiracy. A combination to commit several crimes is a single offense. * * * We find that the indictment clearly charges an offense, a single offense, namely, the crime of conspiracy, and that therefore one count was adequate and the count is not duplicitous * * *."
See, also, State v. Continental Purchasing Co., Inc., 119 N.J.L. 257, 262 (Sup. Ct. 1938), affirmed 121 N.J.L. 76 (E. & A. 1938); Braverman v. United States, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942), and annotation.
We are of the opinion that the interpretative import of this indictment is to allege the one conspiracy entered into by the defendants on the one date and place therein designated. An epitome of the charge is that the unlawful objects of the confederation were to make extravagant purchases which required the expenditure of the funds of the city in excess of $1,000 without advertising for competitive bids as prescribed by law; have the vendors present bills to the governing body of the municipality for divisions of the total price in amounts less than $1,000; induce their payment and thus fraudulently advantage the vendors and cheat the city.
*320 The obvious fact is that the sectional acts declared in the indictment to have been contemplated by the conspirators in the accomplishment of the ultimate object and purpose of the single scheme are alleged in an inappropriate style. Moreover we notice with some interest in its implication the use throughout the indictment of the phrase "in furtherance of the said unlawful conspiracy." Certain it is that courts do not favor vitiating indictments because of duplicity, and assuredly a conspiracy may in the contemplation of the attainment of its principal object encompass the preconceived commission of several deeds or perhaps criminal offenses. See, for example, State v. Lustberg, 11 N.J. Misc. 51 (Sup. Ct. 1933).
Where the several acts are component parts of the one conspiracy, the pleading is not vulnerable for duplicity. Farrell v. State, 54 N.J.L. 416 (Sup. Ct. 1892). Anent an indictment for malfeasance, State v. Bolitho, 103 N.J.L. 246 (Sup. Ct. 1927), affirmed 104 N.J.L. 446 (E. & A. 1927).
We have considered the signification of the indictment in its entirety. We conclude that it is not palpably duplicitous and that the application to amend or delete from it the repetitious verbiage that has given it that complexion should be granted.
We may add that we have considered the other objections addressed to the legal sufficiency of the indictment and resolve them to be unimpressive.
Reversed.