76 N.J. Super. 536 (1962)
185 A.2d 45
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
DAVID SILVERSTEIN, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 24, 1962.
Decided October 29, 1962.
*538 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. John J. Bergin, Deputy Attorney General, argued the cause for appellant (Mr. Evan William Jahos, Deputy Attorney General, Special Prosecutor, attorney).
Mr. George L. Pellettieri argued the cause for respondent (Messrs. Pellettieri & Rabstein, attorneys).
The opinion of the court was delivered by FREUND, J.A.D.
The State appeals from an order of the trial court dismissing an indictment.
On January 25, 1962 the Mercer County grand jury returned an indictment containing two counts charging defendant, David Silverstein, with the common law offense of misconduct in office during his tenure as undersheriff of Mercer County, contrary to the provisions of N.J.S. 2A:85-1.
The first count of the indictment alleges that between April 19, 1957 and September 26, 1958 defendant, being a duly appointed undersheriff of Mercer County, had taken an oath that he would "well and faithfully" execute his office "according to the best of his skill and judgment," but he "unlawfully and willfully" violated his oath and failed to execute his office well and faithfully. Specifically, the indictment states that he permitted one Milton Silverstein to "act as surety for 30 defendants charged with crimes," *539 knowing that Milton Silverstein was "not licensed or authorized by the State of New Jersey, the Department of Banking and Insurance, to engage in the bail bond and/or insurance business," and knowing that he (as set forth in the affidavits of justification) did not have sufficient equity in the properties in excess of twice the face amount of the bonds pledged as security. Further, the first count alleges that defendant directed and allowed the affidavits of justification supporting Milton Silverstein's bonds to be falsely filled out with respect to the amount of bail bonds pledged against his properties and that affidavits of justification were accepted by defendant without requiring Milton Silverstein to swear to the truth of their contents.
The second count of the indictment repeats that defendant, during the time specified, was an undersheriff "having the public duty arising out of the office to faithfully execute the said office according to the best of his skill and judgment." It further alleges that defendant was under a duty to refrain from permitting persons not authorized to engage in the bail bond business, to determine that the equitable value of properties pledged exceeded twice the amount of the bonds accepted, to make certain that affidavits of justification of sureties contained complete and truthful answers, and to administer the oath of such sureties. In addition, it alleges that he failed and neglected to carry out those duties in the several respects thereafter set out, which iterate the specific allegations of the first count.
Each count characterized defendant's failure to comply with the oath and duties of his office, as knowing, willful, unlawful, and contrary to N.J.S. 2A:85-1. Each count also refers to a schedule attached to the indictment listing each of the 30 bonds involved and stating the date the bond was issued, its reference number, its face amount, the total of the bonds outstanding, the amount of equity in the real estate pledged by the bondsman, Milton Silverstein, at the time when the bond was given as security, and the equity remaining in the property computed both on the basis that the *540 equity available must equal the face amount of the bond and on the basis that the equity available must equal twice the face amount of the bond.
Defendant entered a plea of not guilty and moved for a bill of particulars. This motion was later abandoned. Next, a motion was made to dismiss the indictment. In granting the motion, the trial court based its opinion on the failure of the indictment to allege the duty defendant failed to perform, the lack of allegation concerning "corrupt or evil motive," the inadequacy of the offense charged, and the ambiguity of the schedule annexed to the indictment.
Although a motion to quash an indictment is addressed to the discretion of the trial judge, this discretion is to be exercised only "on the clearest and plainest grounds." The indictment should stand unless it is "palpably defective." "Such judicial discretion cannot be arbitrary, vague or fanciful but rather must be governed by and in accord with established principles of law." State v. Bunk, 4 N.J. 482, 485 (1950); State v. Weleck, 10 N.J. 355, 364 (1952). On appeal, the exercise of discretionary authority will not be disturbed unless it has been clearly abused, State v. Bunk, supra, 4 N.J., at p. 485; State v. Spence, 36 N.J. Super. 314, 318 (App. Div. 1955), certif. denied 19 N.J. 441 (1955). Consequently, on this appeal the central question is whether the trial judge abused his discretion in finding the indictment obviously and palpably defective.
Both counts of the indictment charge the defendant with the common law offense usually referred to as misconduct in office, N.J.S. 2A:85-1. State v. Begyn, 34 N.J. 35, 48-9 (1961); State v. Weleck, supra, 10 N.J., at pp. 365-6; State v. McFeeley, 136 N.J.L. 102, 107-8 (Sup. Ct. 1947). The offense of misconduct in office is aptly defined by Professor Perkins to be "corrupt misbehavior by an an officer in the exercise of the duties of his office or while acting under color of his office." Perkins, Criminal Law (1957), p. 413. See 1 Burdick, Law of Crime (1946), § 272, pp. 387-8.
*541 Defendant argues that the indictment does not indicate the requisite duties. However, the "prescribed duties of an office are nothing more nor less than the duties cast by law on the incumbent of the office." State v. Weleck, supra, 10 N.J., at p. 366. As the court stated in State v. Cohen, 32 N.J. 1, 7 (1960):
"* * * where the duty rests in common law or on a general statute, a statement of facts constituting a breach of that duty is sufficient to make the offense judicially apparent, * * *. Just as the source of the prescribed duty existing in the common law or general statute may be judicially noticed, so also may the duty arising from such sources be similarly noticed."
The primary duties attached to the office of undersheriff are derived from the common law, statute, and our rules of criminal procedure.
As a public officer, an undersheriff holds a position of trust. He stands in a fiduciary relationship to serve the public with the obligation to exercise his discretion in good faith, with honesty and integrity, and to the best of his ability. These are obligations, virtute officii, imposed by common law on public officers and assumed by them upon entering public office. These obligations are essential for the best interests of our government and for the benefit of the people it serves. Driscoll v. Burlington-Bristol Bridge Co., 10 N.J. Super. 545, 567-8 (Ch. Div. 1950), modified on other grounds by 8 N.J. 433, 474-6 (1952), certiorari denied 344 U.S. 838, 73 S.Ct. 25, 97 L.Ed. 652, rehearing denied 344 U.S. 888, 72 S.Ct. 181, 97 L.Ed. 687. See 2 Schlosser, Criminal Laws of N.J. (rev. ed. 1953), §§ 1719-20, pp. 850-851.
Before he assumes his office an undersheriff is required by N.J.S.A. 40:41-28 to take an oath that he will "well and faithfully execute" his office. The provisions of his oath comprise the basic duty of the office. As the title of the office indicates, an undersheriff is empowered to act for and on behalf of the sheriff in the exercise of his official powers and duties, and is under no less responsibility than *542 the sheriff. State v. Lombardo, 18 N.J. Super. 511, 520 (Cty. Ct. 1952), affirmed 20 N.J. Super. 317 (App. Div. 1952).
The first count of the indictment alleges the prescribed duties of defendant as undersheriff. It specifically alleges the manner in which defendant failed to "well and faithfully execute" his office: he allowed Milton Silverstein to act as surety on a number of bail bonds, knowing that Milton Silverstein was not a licensed bondsman and did not have sufficient equity in the property pledged to cover the face amount of the bonds. In addition, defendant knowingly accepted false affidavits of justification and accepted affidavits of justification of surety without requiring the affidavits to be sworn as to the truth of their contents. It is clear that the charge of misconduct related to the manner defendant was required to perform his duty as undersheriff in taking bail bonds.
In passing, we note that the indictment alleges that defendant knew Milton Silverstein was not licensed or authorized by the Commissioner of Banking and Insurance to engage in the bail bond business. R.R. 3:9-5(a) provides that in issuing bail bonds a corporate surety must be approved by the Commissioner of Banking and Insurance. But there is no showing that any other classifications are prohibited from going bail or required to obtain a license before they are allowed to go bail. Milton Silverstein is not alleged to be a corporate surety. Therefore, allowing him to provide bail with knowledge that he had no license is not an indictable offense. Defendant does not come within the provisions of N.J.S.A. 17:17-1(g), defining the various kinds of corporations that may issue bail bonds. Nor is defendant within the provisions of N.J.S.A. 17:49-1, which authorizes individual insurance associations to engage in business in this State. These statutory provisions under the circumstances of this case are of no help to the State.
The indictment alleges that defendant knew that certain properties pledged by Milton Silverstein, as set forth in the affidavits of justification of sureties, "did not contain sufficient *543 equity or value in excess of twice the face amount of the bonds pledged." However, no authority is relied upon, nor have we been able to find any, that the equity in the property pledged is required to exceed twice the face amount of the bonds accepted for bail in criminal proceedings.
These deficiencies aside, both counts of the indictment allege that defendant did knowingly and willfully permit affidavits of justification of sureties to be filled out falsely "concerning the amount of bail bonds pledged against the aforesaid properties." Defendant also accepted affidavits without requiring Milton Silverstein to swear to the truth of their contents. R.R. 3:9-6 expressly requires justification by affidavit describing the property, the number and amount of the surety's other recognizances, undischarged undertakings, and all of his other liabilities. This provision is mandatory, and no bond is to be approved unless the surety appears to be qualified in accordance with his affidavit of justification. If defendant accepted bail bonds with knowledge that the affidavits were false and did not require affidavits to be sworn to, he then may be said to have committed an act of misconduct by accepting bail in disregard of this provision.
The trial judge was of the opinion that the indictment did not sufficiently charge the requisite criminal intent. Concerning this allegation in an indictment for official misconduct, our Supreme Court has recently commented:
"The word generally used to describe the nature of such intent is `corruptly'  employed in the instant indictment along with `willfully' and `unlawfully.' Perhaps too much emphasis has been placed on the exact adverb to be used, as witness the haggling and hair-splitting so frequently noted in the cases. There is no particular magic in any word so long as the indictment charges and the proofs support the conclusion that the acts alleged were done with evil motive or in bad faith and not honestly. The degree or nature of the requisite evil will vary with the situation. For example, in nonfeasance, intentional and deliberate refusal or forbearance to perform one's clear duty, without lawful excuse, sufficiently described by the phrase `willfully and unlawfully' is adequate, whereas mere negligence or honest mistake of judgment is not enough. Such is the true meaning *544 of the language used in State v. Winne, supra (12 N.J. [152], at pp. 175-177)." State v. Begyn, supra, 34 N.J., at p. 50.
An indictment's inclusion of the phrase "unlawful and willfully" has been held to negate the exercise of defendant's good faith. It charges the defendant with bad faith in his failure to perform the duties of his office. State v. Winne, 12 N.J. 152, 175 (1953). Willful is opposed to involuntary; it has the connotation of being intentional. State v. Orecchio, 27 N.J. Super. 484, 489 (App. Div. 1953), affirmed 16 N.J. 125 (1954). Both counts of the indictment clearly and properly allege the necessary criminal intent; for defendant is charged with having acted "unlawfully," "willfully" and "knowingly."
Although the factual allegations are claimed to be insufficient, the indictment states the dates during which the alleged misconduct occurred, identifies the principals involved, lists the duties and alleges their violation. The schedule itemizes the specific bail bonds involved and aids to identify clearly the offense and demonstrate the manner in which defendant participated in each transaction. Defendant is fully informed of the charges against him and of each transaction constituting the offense. See State v. Sepede, 76 N.J. Super. 178, 181-2 (Law Div. 1962). If he required any more detailed information, a bill of particulars and the bail bonds themselves were readily available.
Defendant contends that the attached schedule containing an itemized list of the bail bonds may not be regarded as part of the indictment. 27 Am. Jur., Indictments and Information, § 55, p. 622, is relied upon in support of this proposition. Since this reference is the only authority cited for this proposition, an examination of the source of the reference is required.
The section relied on by defendant states that an indictment may not be "supplemented or pieced out by affidavits or extrinsic papers." The only authority given for this comment is People v. Grogan, 260 N.Y. 138, 183 N.E. 273, *545 86 A.L.R. 1266 (Ct. App. 1932). In Grogan the court ruled that the indictment charging defendant with reckless driving could not be supplemented by affidavits in the magistrate's court in an attempt to flesh out the charge. The only authority mentioned in Grogan is People v. Zambounis, 251 N.Y. 94, 97, 167 N.E. 183 (Ct. App. 1929), which also concerns the use of affidavits supplemental to an indictment. The reference given by defendant is not authority for the proposition that papers annexed to an indictment must be disregarded. No other authority is given to support defendant's argument. The schedule of bail bonds was associated with the indictment, both counts of which refer to the "attached schedule," besides mentioning 30 bonds the plaintiff listed in the schedule. Where factual material is detailed and consists of a summary, it is not unusual or improper to attach a schedule to the main document.
Defendant's proper course of action was to request further clarification and documentation through a motion for a bill of particulars. R.R. 3:4-6. State v. Williamson, 54 N.J. Super. 170, 189 (App. Div. 1959), affirmed 31 N.J. 16 (1959). This was the course of action defendant originally pursued and later abandoned.
In conclusion, we find that the indictment meets the minimal standards of validity. Consequently, we are constrained to find that, since the indictment is not obviously and palpably defective, the trial court improperly exercised its discretion in dismissing the indictment.
The order dismissing the indictment is reversed, and the case is remanded for further action not inconsistent with this opinion.