433 P.2d 289

Robert K. CORBIN, County Attorney, County of Maricopa, the State of Arizona, Appellant,

v.

Ira BROADMAN, Wade Church, Arthur Daniels, Irving Fogel, and James Mack, Individually and/or severally, Appellees.

No. 1 CA–CR 109.

Court of Appeals of Arizona.

Nov. 10, 1967.

Rehearing Denied Dec. 12, 1967.

Review Denied Jan. 23, 1968.

John P. Frank, Phoenix, Sp. Counsel for County Atty., for appellant.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by James H. O'Connor, John H. Lyons and Thomas A. McGuire, Jr., Phoenix, for appellee Ira Broadman.

Cavness, DeRose, Senner & Foster, by Jack C. Cavness, Phoenix, for appellee Wade Church.

Kanne & Bickart, by Allen B. Bickart, Phoenix, for appellee Arthur Daniels.

Chandler, Tullar, Udall & Richmond, by Thomas Chandler Tucson, Pain & Julian, by Fred J. Pain, Jr., Phoenix, for appellee Irving Fogel.

Johnson & Shaw, by Marvin Johnson and Joseph P. Shaw, Phoenix, for appellee James Mack.

DONOFRIO, Judge.

This is an appeal by the State, represented by special counsel on behalf of the County Attorney of Maricopa County, from an order quashing a grand jury indictment. The indictment alleging some 28 counts was returned against the appellees and others, charging various crimes, including theft by false pretenses, embezzlement and perjury. These charges arose from the collapse of the Union Title Company.

The facts leading to this appeal can be stated rather simply. An attorney was admitted to the practice of law in Arizona in April 1963. For a short time thereafter he worked in the law office of Ira Broadman who shared offices with two other attorneys. His period of employment there was from two to three weeks, after which time he left to take employment with the County Attorney's office. During the time he was employed by Mr. Broadman, two of the defendants in this case, Daniels and Fogel, were clients of Mr. Broadman. The evidence indicates that during this time the attorney had occasion to look at the files of these clients, to sit in on a conference discussing these clients' cases and to do some research on a case involving at least one of these clients.

Three years later while employed as a deputy county attorney in the County Attorney's office, this attorney was assigned by his superiors to work on a case involving his former employer, Mr. Broadman, and the two previously mentioned clients. The young attorney discussed the matter in January of 1966 with his superior, the County Attorney, and they resolved that he had no reason not to undertake the presentation before the grand jury. On June 9, 1966, the grand jury returned an indictment containing some 17 counts against Broadman, Fogel, Daniels and two other defendants. On August 26, 1966, a motion to quash the indictment was filed and was granted on September 12, 1966. The motion was directed to the entire indictment, and although made by only one of the defendants, it was stipulated that the ruling should govern the other four defendants as well.

The principal question involved is whether the granting of the motion to quash was proper on the basis of the showing of a possible conflict of interest on the part of the deputy county attorney who acted as prosecutor in the grand jury investigation. To sustain the trial court's action we first must find there existed a confidential relationship between the two clients

of Mr. Broadman and the attorney who worked in his office. Secondly, we must find that this relationship disqualified the attorney from prosecuting the clients before the grand jury, and third, that the prosecution by a disqualified attorney gives ground for quashing the indictment.

With reference to the first question, the conduct of an attorney in regard to his clients' confidential communications is rigidly regulated by the Canons of Professional Ethics of the American Bar Association which have been adopted in this state by Supreme Court Rule 29(a), 17 A.R.S. Canon 6 prohibits an attorney from representing conflicting interests unless full consent has been expressed by all concerned. It further forbids the subsequent acceptance of employment from others in matters adversely affecting any interest about which the client has disclosed information to the attorney. Canon 37, in setting out the duty of the lawyer to preserve his client's confidences, provides in part as follows:

"* * * This duty outlasts the lawyer's employment, and extends as well to his employees; and neither of them should accept employment which involves or may involve the disclosure or use of these confidences, either for the private advantage of the lawyer or his employees or to the disadvantage of the client, without his knowledge and consent, and even though there are other available sources of such information. * * *"

It is clear that the County Attorney's office, in passing over the potential conflict of interest problem after it had been brought to their attention, took the Canons of Professional Ethics too lightly.

A fine example of what an attorney should do when faced with a conflict of interest problem is contained in the case of State v. Garaygordobil, 89 Ariz. 161, 359 P.2d 753 (1961). In that case when a city attorney for Nogales was faced with a conflict of interest problem he discussed the matter with other attorneys in the area; he informed the mayor and council of the problem, and sought the opinion of the

Ethics Committee of the State Bar of Arizona. Although we do not set these out as mandatory steps, we feel they are examples of the exercise of good professional judgment.

In the instant case the deputy county attorney consulted only his superiors and they, without outside opinions, incorrectly decided that no harm would come in allowing the deputy to prosecute the case. Even if there were no real danger of prejudice to the principals involved, the jeopardy to the standing of the Bar should have dictated a more cautious course. We agree with the trial court's findings that the deputy county attorney's acts and conduct were in good faith and without intent to harm the former client or employer, however we likewise believe that even though there might not have appeared to them a real danger of prejudice to the defendants, it was nonetheless inappropriate.

The State Bar of Arizona, through its Committee on Ethics, has stated that the mere appearance of a possible conflict is to be condemned. See Opinion No. 190, Arizona State Bar Committee on Rules of Professional Conduct. In State v. Leigh, 178 Kan. 549, 289 P.2d 774 (1955), the Court was confronted with a similar situation. The nominee for County Attorney was contacted by a defendant involved in criminal charges. He consulted with the defendant on two occasions and then after being elected County Attorney undertook to prosecute the defendant in a case involving the matter which he had discussed previously with defendant. The Court therein stated:

" * * * The inviolate rule has long been firmly established both in the Canons of Professional Ethics and by judicial opinions that attorneys cannot represent conflicting interests or undertake to discharge inconsistent duties. When an attorney has once been retained and received the confidence of a client, he cannot enter the services of those whose interests are adverse to that of his client or take employment in matters so closely related to those of his client or former client as, in effect, to be a part thereof. The rule is a rigid one, and it is well that it is so. It is designed not only to prevent the dishonest practitioner from fraudulent conduct, but to preclude the honest practitioner from placing himself in a position where he may be required to choose between two conflicting duties. He should undertake no adverse employment, no matter how honest may be his motives and intentions. He owes to his client fidelity, secrecy, diligence and skill, and cannot take a reward from the other side. He is not, as a general rule, allowed to divulge information and secrets imparted to him by his clients or acquired during their professional relation unless authorized to do so by the client himself.

"It is the honor of the legal profession that its fidelity to its clients can be depended upon, that a person may safely go to a lawyer and counsel with him upon personal and confidential matters with the absolute assurance that the lawyer's tongue is tied from ever divulging it, and a strict enforcement of this rule requires that an attorney, on terminating his employment, cannot thereafter act as counsel against his client in the same general matter, even though, while acting for his former client, he acquired no knowledge which could operate to the client's disadvantage in the subsequent, adverse employment, and this rule applies not only to civil, but criminal cases. An attorney cannot be permitted to participate in the prosecution of a criminal case if, by reason of his professional relations with the accused, he has acquired knowledge of facts upon which the prosecution is predicated or which are closely interwoven therewith.

"The mentioned rules of law, together with many others, were enunciated in the following similar cases: Peirce v. Palmer, 31 R.I. 432, 77 A. 201, Ann.

Cas. 1912B, 181; People v. Gerold, 265 Ill. 448, 107 N.E. 165, Ann.Cas.1916A, 636; Steeley v. State, 17 Okl.Cr. 252, 187 P. 821; Hall v. State, 24 Okl.Cr. 197, 217 P. 229; Thoreson v. State, 69 Okl.Cr. 128, 100 P.2d 896; State v. Rocker, 130 Iowa 239, 106 N.W. 645; State v. Halstead, 73 Iowa 376, 35 N.W. 457; Hosford v. Eno, 41 S.D. 65, 168 N.W. 764, L.R.A.1918F, 831; In re Michal, 415 Ill. 150, 112 N.E.2d 603; T. C. Theatre Corp. v. Warner Bros. Pictures, D.C., 113 F.Supp. 265. See, also, 18 C.J. 1312; 27 C.J.S. District and Prosecuting Attorneys § 12(3) e, p. 398; 5 Am.Jur. 296, § 64, and 298, § 66."

■ In the matter before us it appears that while employed by the attorney for two of the defendants, the deputy county attorney had knowledge of some of the facts contained in the indictment and of information necessary for the indictment. Therefore he was ethically bound to step aside when the prosecution of these defendants was before the County Attorney's office.

Having determined that there exists a confidential relationship and conflict of interest which disqualifies the deputy county attorney, we now turn to the final question of whether the presentation of evidence before the grand jury by the disqualified deputy gives grounds for quashing the indictment.

Appellant urges that even if the deputy county attorney had a potential or even a real conflict of interest, the Rules of Criminal Procedure do not allow the quashing of an indictment for such a reason. The pertinent portions of the rules involved are: Rule 169, Arizona Rules of Criminal Procedure, 17 A.R.S., which provides as follows:

"A. A motion to quash the indictment or information shall be available only on one or more of the following grounds. In the case of:

\* \* \* \* \* \*

"2. An indictment:

\* \* \* \* \* \*

"(b) That a person, other than a grand juror, was present while the grand jurors were deliberating or voting and there is reasonable cause to believe that the defendant was in fact prejudiced thereby" and:

Rule 98, Arizona Rules of Criminal Procedure concerning grand jury, which provides:

"No person shall be present at the sessions of the grand jury except the witness under examination, the county attorney and his deputies or other prosecuting officer, the reporter, if any, and the interpreter, if any. No person shall be present while the grand jurors are deliberating or voting. Any person violating either of the above prohibitions may be held in contempt of court."

The thrust of appellant's contention is that by Rule 169 a motion to quash is available only on certain grounds, none of which obtain in the instant case; specifically, that subsection A(2)(b) of Rule 169 requires the presence of the attorney "while the grand jurors were deliberating or voting" of which there is no evidence, and further, that there is equally no evidence that the defendant was in fact prejudiced to come within the requirement of the clause of the section that there be "reasonable cause to believe that the defendant was in fact prejudiced thereby."

Although we might agree that our Supreme Court has held that the grounds set forth in Rule 169 for the quashing of an indictment or information are exclusive and that upon a strict construction of these rules the precise conditions of either of the rules cited may not have obtained, we cannot, however, agree to the strict construction and that the trial court has committed error.

■ We are governed by certain fundamental rules of law which provide that a defendant must be given a fair and impartial hearing. Arizona Constitution, Article

II, Section 4, A.R.S., and the Fourteenth Amendment to the U. S. Constitution provide that no person shall be deprived of life, liberty, or property without due process ·of law. The United States Supreme Court ·of late in a long series of cases has been rigidly upholding the equal protection and ·due process of law clauses of our Constitution. It has stated that where the right to a jury trial has been preserved, as it has by all state constitutions, the failure to accord an accused a fair trial violates even the minimal standards of due process. Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed. 2d 751 (1961). In Beck v. Washington, 369 U.S. 541, 82 S.Ct. 955, 8 L.Ed.2d 98 (1962), the Supreme Court indicated the same standard of fairness should be applied to grand juries. Although in Beck the Supreme Court determined that there was insufficient evidence that pretrial publicity, which was the issue in the case, had an adverse effect upon the grand jurors, it said that a state once resorting to a grand jury procedure must comply with the due process clause of the Fourteenth Amendment and furnish an unbiased grand jury.

■ The cases of late holding that equal protection and due process guarantees must be rigidly observed are clear in holding that a state electing to use the grand jury procedure must furnish an unbiased grand jury and present the evidence to the grand jury in a fair and impartial manner. Our Supreme Court, in following this trend, recently in State v. Superior Court In And For The County Of Pima, 102 Ariz. 388, 430 P.2d 408 (1967), upheld a Superior Court ruling which quashed a grand jury indictment on the basis that there was ground for a challenge to the panel.

In State v. Superior Court, supra, the judge calling the grand jurors failed to ask the questions required by A.R.S. § 21–201, touching upon their qualifications to serve as jurors. The defense, as in the instant case, urged that the Court's failure was not a ground set out in Rule 169. Specifically, that the failure to qualify the jury did not come within the wording of Subsection A(2)(a) which reads:

"2. An indictment:

"(a) That there was ground for a challenge to the panel or to an individual grand juror."

The Supreme Court then considered Rule 84, Rules of Criminal Procedure, which reads:

"A challenge to the panel may be made only on the ground that the grand jurors were not selected or drawn according to law."

and by giving a broad meaning to the word "selected", citing authority, held that the failure to properly qualify the jurors gave a basis for the challenge to the panel and thus came within the grounds set out in Rule 169, subd. A(2) (a).

■ Approaching the instant problem in the same manner, we would find a parallel result. Rule 98 provides that "[n]o person shall be present at the sessions of the grand jury except" and then goes on to name the deputy county attorney and others as permitted parties. It is the interpretation of this sentence upon which the case turns. We hold that the deputy county attorney, being disqualified to prosecute or present matters to the grand jury by virtue of his conflict of interest, was an unauthorized person at the sessions of the grand jury. Ordinarily, the deputy is permitted before sessions of the grand jury; in this case, however, because of the conflict of interest he is disqualified and prohibited from acting in the matters involving his former clients and therefore not a party to be permitted in the sessions as contemplated by the rule. He becomes in contemplation of law a person unauthorized to appear before the grand jury and within the exclusion of Rule 98. In State v. Superior Court, supra, the interpretation of Rule 84 was the foundation, so to speak, of the motion to quash. In our case, the interpretation of Rule 98 furnishes the foundation.

The fact that the deputy was not present while the grand jurors were deliberating or voting is not decisive, for it is not upon this point (Rule 169, subd. A(2) (b)) that the case turns. Rule 98 states that no person shall be present at the sessions of the grand jury except those named. The deputy county attorney must be one that is authorized because of the fact that he is properly prosecuting the matters before the session, otherwise there would be no need for him to act as a deputy. When he appears before the grand jury as an unauthorized person he is not excepted by the rule and the sessions are thereby so tainted as to invalidate them. To hold otherwise would render the rule meaningless.

 There is an abundance of authority holding that a prosecutor having a conflict of interest because of prior employment with the defendant is a person unauthorized to be present in the grand jury room. Maley v. District Court Of Woodbury County, 221 Iowa 732, 266 N.W. 815 (1936) (overruled on other grounds in Uhl v. District Court In And For Monona County, 231 Iowa 1046, 2 N.W.2d 741 (1942)); Coblentz v. State, 164 Md. 558, 166 A. 45, 88 A.L.R. 886 (1933); State v. Rocker, 130 Iowa 239, 106 N.W. 645 (1906); and State v. Detroit Motors 62 N.J. Super. 386, 163 A.2d 227 (1957). The Maley case, supra, sets forth the basic proposition involved, that when a prosecutor by his conduct disqualifies himself to act he has no right to appear before the grand jury and is therefore wholly unauthorized. It is further stated that it is not necessary that his participation be corrupt or that unfair means be used. If his participation was unauthorized, the proceeding was unlawful. There is a lack of due process of law and a failure of a fair hearing when evidence is presented to a grand jury by an unauthorized person acting as a prosecuting attorney when such person has confidential information concerning the persons against whom the evidence is being presented. The injury is not limited to the defendant—there is injury to the system, to the law as an institution, to the community at large, and to the democratic ideal reflected in the processes of our courts. A person accused of a crime, to be entitled to due process, does not have to show that he would be injured if due process is lacking. The right to be tried in accordance with the law is the constitutional privilege of every man. State v. Madison, 240 Md. 265, 213 A.2d 880 (1965); Ballard v. United States, 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181 (1946). Also appropriate are the following quotations from Coblentz, supra:

"But there are many decisions by courts of other states and of the United States on the same objection. Differences of opinion have been expressed, but the weight of authority now seems in accord with the view we have stated. 'The right of the citizen to an investigation by a grand jury pursuant to the law of the land is invaded by the participation of an unauthorized person in such proceedings, be that participation great or small. It is not necessary that participation should be corrupt, or that unfair means were used. If the person participating was unauthorized, it was unlawful.' Latham v. United States [5 Cir.] 226 F. 420, 424, L.R.A. 1916D, 1118. 'If the presence of an unauthorized person in the grand jury room may be excused, who will set bounds to the abuse to follow such a breach of the safeguards which surround the grand jury. * * * It is beyond question that no person, other than a witness undergoing examination, and the attorney for the government, can be present during the sessions of the grand jury. The rule is inherent in the grand jury system with all the force of a statutory enactment. The cases where bailiffs and stenographers have on occasions been temporarily present in the grand jury room are only apparent exceptions. The rule, in its spirit and purpose, admits of no exception.' United States v. Edgerton (D.C.) 80 F. 374, 375. In a case previously cited, United States v. Rosenthal [2 Cir.] 121 F. 862, the

court held an indictment void because of the presence in the grand jury room of an attorney appointed by the Department of Justice under the supposed authority of a statute like that in this state for appointment of an assistant for the trial, and said, page 873 of 121 F.: 'Every citizen is amenable to the secret inquisition of the grand jury, and he may demand justly that his essential rights be guarded by the wholesome preservation of settled systems and policies, that give greater certainty to legal proceedings, and fix on the designated prosecuting officer of the locality inevitable accountability for what is done or omitted. The inconvenience of resubmitting the matter to the grand jury is temporary; the injustice of denying the defendants investigation pursuant to the law of the land would be perpetual.' And supporting the same conclusion are the cases of United States v. Virginia Carolina Chemical Co. [6 Cir.] 163 F. 66; United States v. Heinze [2 Cir.] 177 F. 770; Hartgraves v. State, 5 Okl.Cr. 266, 114 P. 343, 33 L.R.A., (N.S.) 568, Ann.Cas.1912D, 180; Wilson v. State, 70 Miss. 595, 13 So. 225, 35 Am.St.Rep. 664; State v. Wetzel, 75 W.Va. 7, 83 S.E. 68, Ann.Cas.1918A, 1074; Lewis v. Board of Com'rs of Wake County, 74 N.C. 194; Durr v. State, 53 Miss. 425; Commonwealth v. Harris, 231 Mass. 584, 121 N.E. 409, and Lebowitch v. Commonwealth, 235 Mass. 357, 126 N.E. 831. And see notes: 33 L.R.A. (N.S.) 568; Ann.Cas.1912D, 184; Ann. Cas.1918A, 1080."

In view of the pronouncements of our courts making it violative of due process to admit unauthorized persons before sessions of the grand jury, which we find the evidence in the case shows, and of the construction to be placed on the Rules of Criminal Procedure as announced by our Supreme Court, we find no error.

Affirmed.

CAMERON, C. J., and STEVENS, J., concur.