460 P.2d 662

**The STATE of Arizona, Appellant,**

v.

**Joe G. GOOD, Appellee.**

**No. 2 CA–CR 153.**

Court of Appeals of Arizona.

Division 2.

Nov. 5, 1969.

Richard J. Riley, Cochise County Atty., by Alan L. Slaughter, Chief Deputy County Atty., Bisbee, for appellant.

Wesley E. Polley, Bisbee, and W. Shelley Richey, Douglas, for appellee.

HOWARD, Judge.

In this appeal, the State challenges the propriety of granting the defendant's Motion to Quash an indictment charging two counts of obstructing justice.[1] Numerous grounds were presented in support of the Motion to Quash and the trial court, in granting the motion stated its reasons therefor, a practice commended by the Arizona Supreme Court. See State v. Bennett, 74 Ariz. 6, 242 P.2d 840 (1952).

One of the reasons given by the court is:

"The court further finds that the record is permeated with statements by the prosecution which violates the intent of Rule 100, Rules of Criminal Procedure, which tended to influence the actions of a Grand Jury and consti-

tuted opinions and testimony in addition to the evidence adduced from the witnesses. The proceedings in this regard reached the point where the prosecution and the Grand Jury engaged in strategic warfare with the Board of Supervisors so that the Grand Jurors lost their ability to act in a fair and impartial manner."

It would appear from the record that the purpose of the grand jury proceedings was to inquire into purported corrupt practices in county government, particularly the conduct of the County Board of Supervisors of which defendant Good was the chairman. On August 18, 1966, the grand jury was convened and on August 22, 1966, the day it commenced taking testimony, a letter was hand-delivered to the county attorney who was present at the grand jury proceedings as legal advisor to the jury. This letter, addressed to the county attorney, and signed by defendant Good as chairman of the Board of Supervisors, requested that the county attorney submit a sworn, written report to the Board as to certain designated matters connected with the duties of the county attorney's office. The two counts of obstructing justice were founded on this letter. The subject indictment was returned on August 24, 1966.

A Motion to Quash is addressed to the sound discretion of the trial court. State ex rel. Woodard v. Adams, 400 P.2d 467 (Okla.1965); State v. Silverstein, 76 N.J.Super. 536, 185 A.2d 45 (1962); 41 Am.Jur.2d Indictments and Informations § 284; 42 C.J.S. Indictments and Informations § 196.

Rule 100, Rules of Criminal Procedure, 17 A.R.S., delineates the duty of the county attorney at the grand jury sessions:

The county attorney or other prosecuting officer shall attend the grand jurors when requested by them, and may do so although not requested for the purpose of examining witnesses; in their

1. A jurisdictional challenge, raised by Motion to Dismiss, has previously been disposed of by this court as being without

merit. See State v. Good, 9 Ariz.App. 388, 452 P.2d 715 (1969).

**558**

presence, or of giving the grand jurors legal advice regarding any matter cognizable by them. He shall also, when requested by them, draft indictments and cause process to issue for the attendance of witnesses."

Rule 103, Rules of Criminal Procedure, 17 A.R.S., sets forth the type of evidence upon which an indictment may be found and limits the role of the county attorney to advising the grand jurors when in doubt as to whether or not there is sufficient legal evidence:

"A. The grand jurors shall find an indictment only where they have received what they believe to be sufficient legal evidence and in case of doubt they may ask the advice of the county attorney or prosecuting officer * * *."

Rule 169, Rules of Criminal Procedure, 17 A.R.S., provides:

"A. A motion to quash the indictment or information shall be available only on one or more of the following grounds. In the case of:

\* \* \* \* \* \*

2. An indictment:

\* \* \* \* \* \*

(e) That the indictment was not found, endorsed and presented as prescribed in these Rules. * * *"

■ The functions of the prosecutor, judge and the grand jury, properly executed, act as a system of checks and balances. State ex rel. Burton v. Smith, 174 Ohio St. 429, 189 N.E.2d 876 (1963). A prosecutor, whose role during grand jury proceedings is carefully circumscribed, must refrain from conducting himself, by word or deed, in such a manner as to invade the jury's province or tend to influence its action. Commonwealth v. Favulli, 352 Mass. 95, 224 N.E.2d 422 (1967); Attorney General v. Pelletier, 240 Mass. 264, 134 N.E. 407 (1922); Commonwealth v. Smart, 368 Pa. 630, 84 A.2d 782 (1951); United States v. DiGrazia, D.C., 213 F.Supp. 232 (1963); Hammers v. State, 337 P.2d 1097 (Okla. Crim.App.1959); 38 C.J.S. Grand Juries §

40(b); 38 Am.Jur.2d, Grand Jury, § 33; 42 Am.Jur., Prosecuting Attorneys, § 20.

■ We conceive that when a county attorney indulges in conduct not sanctioned by Rules 100 and 103, supra, namely, by attempting to improperly influence the action of the grand jury, the indictment is not "found * * * as prescribed in these Rules". The following statements of the county attorney exemplify his conduct:

"And I feel at the very least, Mr. Good ought to be dragged up here by the scuff of the neck and asked:

'How come;. who put you up to it; why are you doing it; why haven't you done this before;

* * *.' " and,

"I think he ducked it out of here the minute he signed that letter." and,

"You don't—we are bucking quite a fight here. I don't want to get into details. But this is a declaration of war, as far as I'm concerned, by Mr. Good. And I don't think it should go unanswered."

A deputy county attorney, who was also present at the grand jury session, indicated to the jurors that he had "some rather strong feelings on the subject". He stated:

"* * * deliberate sometime today and decide whether you feel as strongly as I feel that this is an attempt to obstruct the grand jury in the performance of its duties. * * * Before, we felt that the letter was a declaration of war on the grand jury, on the grand jury proceedings. It's attempted to create an obstruction, to create havoc with our proceedings. * * * I feel, if you do not respond to a show of force to a declaration of war, that to all intents and purposes you are done. You are over with. Only for that reason. For all the other reasons that you will decide on yourselves when you get together, I feel that that's indicated, somebody has punched you. Now, are you going to punch them back or are you just going to lay down? That's my approach to it."

One juror questioned the deputy county attorney as to whether he felt that the

grand jury should return an indictment, to which the deputy responded:

"I would say if I were doing it, if I were the grand jury, which I am not, and juries very often disagree with me, I would indict Mr. Good. Because you can't permit the work of the jury to be interfered with the way I think he's doing it.

Number two, I would file an accusation at the same time and the indictment, shooting both barrels."

■ Exhortations and factual interpretations by the county attorney to the grand jury are improper. The members of the grand jury should be permitted to act free from sway or control from any source and without favor. Hammers v. State, supra.

In Blake v. State, 54 Okla.Cr. 62, 14 P.2d 240, 243 (1932), quoting from Blau v. State, 82 Miss. 514, 34 So. 153, 155, it was said:

"The grand jury may at all reasonable times during the discharge of their duties appeal either to the court or to the prosecuting attorney for advice, but this advice must be restricted to matter of law, sufficiency of service, and proper dispatch of the public business. Neither the court nor this officer can say to the grand jury that the facts, as shown by the evidence, are sufficient to authorize them to find a bill."

In Hammers v. State, supra, the court quotes from Commonwealth v. Bane, 39 Pa.Dist. & Co.R. 664, 674.

" * * * any attempt to influence their action or to give effect to the evidence adduced is grossly improper and impertinent. * * * Every man, whatever the offenses of which he may be suspected, is as much entitled to the just, impartial, and unbiased judgment of a grand jury as he is to that of a petit jury on his final trial. It is as essential that the one body as the other should be permitted to act free from sway or control from any source and without fear or favor. The temptation to disregard these safeguards of the rights of persons accused is often great, though, happily, the instances are few where it has been yielded to; but this is one of them of a character so flagrant and shocking that no American court could tolerate it, and it is our duty to say so with emphasis. * * *"

In Attorney General v. Pelletier, supra, the court held:

"Its purpose [statute] was sedulously to preserve in its integrity the absolute freedom of the grand jury from every outside influence. It would be a mockery of constitutional rights and obligations to permit the district attorney, because of his presence with the grand jury, secretly to exercise a control which the court is forbidden to exercise even openly.

* * * * * *

" * * * He [prosecuting attorney] cannot participate in the deliberations or express opinions on questions of fact or attempt in any way to influence the action. His duty is ended when he has laid before the grand jury the evidence and explained the meaning of the law. The weight and credibility of the evidence is wholly for the grand jury. He should refrain from expressing an opinion on the facts even if asked."

■■ The conduct of the county attorney in this matter went far beyond that permitted by law. Just as there is a lack of due process of law and a failure of a fair hearing when evidence is presented to a grand jury by an unauthorized person acting as a prosecuting attorney, Corbin v. Broadman, 6 Ariz.App. 436, 433 P.2d 289 (review denied 1968), there is a lack of due process and an injury to the system, to the law as an institution, to the community at large, and to the democratic ideal reflected in the judicial process when the county attorney improperly attempts to influence the actions of the grand jury. Nor is it necessary for the defendant to show that the actions of the county attorney in fact influenced the grand jury. A

person accused of a crime, to be entitled to due process, does not have to show that he would be injured if due process is lacking. The right to be tried in accordance with the law is a constitutional privilege of every man. Corbin v. Broadman, supra.

Finding no error in the challenged ruling, the order quashing the indictment is affirmed.

KRUCKER, C. J., concurs.

JOHN R. McGUIRE, Superior Court Judge (specially concurring).

I concur in the result as there were grave irregularities. There is the further problem (not briefed) that there is serious doubt whether the indictment sets out a public offense.

Under modern concepts of fairness to the accused, the secrecy of the grand jury room has been more and more invaded. Indictments are dismissed on grounds having absolutely no bearing on the question of guilt or innocence. Policies of this type should be applied with great caution. Justice requires that the guilty be convicted as well as the innocent acquitted. The maxim that it is better many guilty men escape, than one innocent man be convicted has no application to motions not affecting the merits.

A defendant is not entitled to delays in pleading and hence in getting to trial by lengthy proceedings hoping to uncover somewhere a remark by the county attorney, a grand juror, or a witness that can be claimed "prejudicial".

The state as well as the defendant is entitled to a speedy disposition of criminal cases. I do not believe the majority opinion, logically construed, disregards the principles mentioned above but I set them forth to emphasize my views.

NOTE: Judge JAMES D. HATHAWAY having requested that he be relieved from consideration of this matter, Judge JOHN A. McGUIRE was called to sit in his stead and participate in the determination of this decision.